## COMMISSIONERS OF DOUGLAS COUNTY *v.* BOLLES.

1. Where a railroad company has been a corporation *de facto* from the date of its organization, its existence and its ability to contract cannot be called in question in a suit brought upon evidences of debt given to it.
2. Under the act of the legislature of Kansas, to authorize counties and cities to issue bonds to railroad companies, approved April 10, 1865, and that of Feb. 25, 1868, the board of commissioners of a county is authorized to determine whether the condition precedent to the lawful issue of such bonds has been complied with.
3. A recital by the board in the bonds, showing that such condition has been complied with, is, when they are in the hands of a *bona fide* holder for value, binding upon the county; and he is bound to look for nothing behind the recital except legislative authority for the issue of them.

ERROR to the Circuit Court of the United States for the District of Kansas.

This was an action by Matthew Bolles and M. Shepard Bolles against the board of county commissioners of the county of Douglas, Kansas, upon sundry coupons attached to certain bonds issued by the county. The facts are stated in the opinion of the court.

The following questions of law arose, upon which the judges of the court below were divided in opinion : —

1. Whether, as respects the bonds dated July 1, 1869, and the coupons in suit originally attached to said bonds, there was authority and power in the board of county commissioners of the county to issue said bonds under the act of Feb. 10, 1865, recited in the bonds and other acts of the legislature of the State of Kansas, including the act of Feb. 25, 1868.

2. Whether the bonds mentioned in the preceding question are void in the hands of a holder for value without actual

notice, because the vote on the question of subscribing stock and issuing bonds was had Sept. 12, 1865, before the organization of the company known as the St. Louis, Lawrence, and Denver Railroad Company was made in 1868, to which company the stock was subscribed in 1868, and the bonds were issued and delivered in 1871.

3. Said bonds having been issued upon the facts as found, was the issue of them illegal and invalid in such a sense as to devolve upon the plaintiffs the burden of showing that they, or those whom they represented, were holders of them for value?

4. Whether, as respects the bonds dated July 1, 1872, and the coupons in suit originally attached to said bonds, there was power and authority in the board of county commissioners of the county to issue the same.

5. Whether, upon the facts found, said bonds and coupons last named are void in the hands of a holder for value without actual notice of the orders for and facts connected with the election therefor, and with the organization of the said rail road company.

6. Said bonds having been issued under the facts as found, was the issue of them illegal and invalid in such a sense as to devolve upon the plaintiffs the burden of showing that they, or those whom they represented, were purchasers or holders of them for value?

7. Whether the facts found constitute or show a defence to the bonds of July 1, 1869, or the said bonds of July 1, 1872, the said bonds or coupons attached thereto in suit being in the hands of the plaintiffs, without affirmative proof that they were holders thereof for value without notice of said facts.

There was a judgment for the plaintiffs below; whereupon the defendants brought the case here.

Submitted on printed arguments by *Mr. William M. Nevison* for the plaintiffs in error, and by *Mr. John S. Abbott, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

Whether the St. Louis, Lawrence, and Denver Railroad Company was lawfully a corporation, capable of contracting with the defendants below, is a question that cannot be raised in this case. The findings of the Circuit Court establish that a

majority of the persons named as corporators in the certificate filed in the office of the secretary of state on the eleventh day of May, 1868, published a notice that books would be opened on a designated day for subscriptions to the stock of the company. The books were accordingly opened, subscriptions to the capital stock were made, a meeting of the stockholders ensued, and directors were chosen, together with a president, vice-president, secretary, treasurer, and an executive committee. This was on the 28th of July, 1868; and from that time corporate meetings have been regularly held, and the company has built and operated a railroad from Lawrence to the Missouri State line, and has exercised the usual functions of a railroad corporation. It has been a corporation *de facto*, at least, if not *de jure*, from the date of its organization. Its corporate existence, therefore, and its ability to contract cannot be called in question in a suit brought upon evidences of debt given to it.

It was after the organization of the company that the defendants subscribed, on behalf of Douglas County, for $125,000 of its capital stock, stipulating that the subscription should be paid with the county bonds, payable to bearer in thirty years, and that the stock and bonds should be issued and delivered when the railroad should be completed and in full operation from Lawrence to the eastern boundary of Douglas County. The road was thus completed and put in operation; the county received the $125,000 of stock; and the bonds were sold by the railroad company to the contractor for building the road, and, after its completion, delivered to him by direction of the defendants.

The bonds were executed by the board of county commissioners of the county of Douglas, who by law are constituted the financial agents of the county. They were made payable to bearer, and each contains the following recital: " This bond is executed and issued by virtue of and in accordance with the act of the legislature of the State of Kansas, entitled 'An Act to authorize counties and cities to issue bonds to railroad companies,' approved April 10, 1865, and the other laws of said State, and in pursuance of and in accordance with the vote of a majority of the qualified electors of said county of Douglas, at a special election, regularly called and held on Sept. 12, 1865."

This recital, it will be perceived, asserts legislative authority for the issue of the bonds, found in the statute of April 10, 1865, and other laws of the State. Referring to the act of 1865, it is there enacted that the "board of county commissioners of any county to, into, through, from, or near which, whether in this or any other State, any railroad is or may be located, may subscribe to the capital stock of any such railroad corporation, in the name and for the benefit of the county, not exceeding in amount the sum of $300,000 in any one corporation, and may issue the bonds of said county in such amounts as they may deem best, in payment for said stocks, provided that said bonds shall be issued only in payment of assessments made upon all the stocks of such railroad company, which bonds shall bear interest at a rate not exceeding seven per cent per annum, and shall be payable within thirty years. But no such bonds shall be issued until the question shall be first submitted to a vote of the qualified electors of the county at some general election or at some special election to be called by the board of county commissioners, . . . and, in submitting such question, said board of commissioners shall direct in what manner the ballot shall be cast. If a majority of the votes cast at such election shall be in favor of issuing such bonds, the board of commissioners of the county shall issue the same." Stats. of Kansas, 1865, p. 41. This statute plainly gives to the board plenary authority to subscribe for stock of a railroad corporation, and to issue county bonds in payment of the subscription, though whether such authority in any case may be exercised or not is made to depend upon the collateral question whether the result of a popular election has indicated an approval of the proposed issue. And the board of commissioners is the tribunal contemplated by the laws to determine whether the contingency of fact has occurred, — a determination necessary to be made preparatory to their issuing the county bonds.

The act of 1865 was followed by the act of Feb. 25, 1868, which was in force when the stock subscription above mentioned was made, and when the bonds of Douglas County were executed and delivered. This later act was even more liberal in its grants of authority than the former was. It referred to elections held before its passage, and to irregular elections, which

might not have been in compliance with the statutes. It enacted, in substance, that whenever there had been an election called by the board, at which a majority of the persons voting had voted in favor of subscribing stock and issuing bonds to any railroad company or companies, the board might subscribe and pay the subscription, by issuing to each company the bonds of the county, whether such orders and elections, or either of them, had been in compliance with the statutes in such cases made and provided, or not, or whether the proposition submitted at the election was for the subscription for stock and issuance of bonds to one or more railroad companies. The purpose of this act was evidently to cure irregularities and invalidities of prior elections, and to enlarge the powers of county boards. Still, under this act, as under the former, the board was to judge whether the precedent condition had been complied with in substance. Gen. Stats. of Kansas, 892.

Such, then, having been the authority of the board of commissioners of Douglas County when the bonds now under consideration were issued, what must be the effect of the recitals they contain? The question has been frequently before us for decision, and it is no longer open for debate. In the late case of *Town of Coloma* v. *Eaves*, 92 U. S. 484, we considered it fully, and reviewed many of our former judgments. We there held that when, by legislative enactment, authority has been given to a municipality, or to its officers, to subscribe for the stock of a railroad company, and to issue municipal bonds in payment, but only on some precedent condition, such as a popular vote favoring the subscription, and where it may be gathered from the enactment that the officers of the municipality were invested with power to decide whether that condition had been complied with, their recital that it had been, made in the bonds issued by them and held by a *bona fide* purchaser, is conclusive of the fact and binding upon the municipality, for the recital is itself a decision of the fact by the appointed tribunal. The recitals we have now before us are that the bonds were executed and issued not only in virtue of, but in accordance with, the acts of the legislature, and in pursuance of and in accordance with the vote of a majority of the qualified electors of the county. They are untrue, if the board had not followed

the directions of the law, and if there had not been a popular vote at an election, approving the issue of those bonds. The truth or falsehood of the assertion cannot be inquired after here; for, as we have said, the recitals are practically an annunciation of the judgment of the board, that all the steps required by the law had been taken.

Behind such a recital, as we have seen, a *bona fide* holder for value paid is bound to look for nothing except legislative authority given for the issue of municipal bonds to railroad companies. He is not required to examine whether the conditions upon which such authority may be exercised have been fulfilled. He may rely upon the decision made by the tribunal selected by the legislature.

Do, then, the plaintiffs below stand in the position of *bona fide* holders for value paid, and without notice of any defect or irregularity in the proceedings anterior to the issue of the bonds? In view of the findings of the Circuit Court, very plainly they do. They are the holders of the coupons in suit taken from those bonds, some of which they purchased without notice of any defence. The residue of those held by them are owned by other persons, who deposited them with the plaintiffs for collection, taking a receipt. There is no evidence when or for what consideration those other persons purchased, and no evidence of actual notice to them or to the plaintiffs of any of the facts anterior to the issue of the bonds. The findings of the court exhibit no fraud in the inception of the contracts, nor any thing that casts upon the holders of the bonds or coupons the burden of showing that they are *bona fide* holders for value. The legal presumption, therefore, is that they are. But the plaintiffs are not forced to rest upon mere presumption to support their claim to be considered as having the rights of purchasers without notice of any defence. They can call to their aid the fact that their predecessors in ownership were such purchasers. To the rights of those predecessors they have succeeded. Certainly, the railroad company paid for the bonds and coupons by giving an equal amount of their stock, which the county now holds; and nothing in the special facts found shows that the company knew of any irregularity or fault in the issue. And still more: the contractor for building the

railroad received the bonds from the county in payment for his work, either in whole or in part, after his work had been completed. There is no pretence that he had notice of any thing that should have made him doubt their validity. Why was he not a *bona fide* purchaser for value? The law is undoubted, that every person succeeding him in the ownership of the bonds is entitled to stand upon his rights.

It is, therefore, manifest that the plaintiffs have the rights of *bona fide* purchasers, even if the burden of showing it be regarded as resting on them.

What we have said is sufficient to show that the coupons of the first class of bonds, viz., those dated July 1, 1869, are valid evidences of debt as between the plaintiffs and the defendants, and that the former are entitled to a judgment for the amount of them.

It is unnecessary to remark at length upon the second class of bonds and coupons, those dated July 1, 1872. The considerations we have suggested respecting the first apply in full force to the second, and the defendants have no defence to a suit for their recovery brought by the plaintiffs. The first and fourth questions certified from the Circuit Court are, therefore, answered in the affirmative, and the remaining questions in the negative. This leads to an affirmance of the judgment.

Happily, such a result is in accordance with the plainest justice. The case is not one in which the municipality has incurred a debt, without securing the object sought by it. Popular votes approved the issue of the bonds to further the construction of the railroad, which has been completed, and which the county now enjoys. The bonds have not been misappropriated or squandered. They have been applied to the purpose for which they were made. By direction of the county, they were paid to the contractor who built the road, after his contract was completed, and, as intended, they have gone into the hands of remote purchasers. In addition to this, the county received in exchange for them an equal amount of stock of the railroad company. So far as appears, it holds that stock still. It has acted as the owner, by assenting to a consolidation of the company with another. Common honesty demands that a debt thus incurred should be paid.          *Judgment affirmed.*