JOHN S. CAGWIN, APPELLANT, *v.* THE TOWN OF HAN-COCK, RESPONDENT.

*Town bonding—when an affidavit of the assessor that the consent has been signed by the requisite number of tax-payers is conclusive evidence thereof—1866, ch. 398, § 2.*

Section 2 of chapter 398 of 1866, authorizing the town of Hancock to issue its bonds to aid in the construction of a railroad, upon obtaining the consent in writing of a majority of the tax-payers thereof, provides that " the fact that a majority of the said tax-payers, representing a majority of the taxable property, has been obtained and acknowledged or proved, shall be proved by the affidavit in writing of one of the assessors of the town, or city, or by the affidavit of the town or county clerk, and shall be indorsed upon or annexed to said written consent, and the said consent and affidavit shall be filed in the town clerk's office of the town, and a copy thereof in the county clerk's office of the county . . . . and it shall be the duty of the said assessors, and town and county clerks, to make such affidavit when said consent shall have been obtained."

*Held,* that the object of the statute was to enable one about to loan money to the town to ascertain how the question, as to whether or not the requisite consent had been obtained, had been decided by the officers to whom the decision thereof had been intrusted; and that one purchasing the bonds in

good faith, after the affidavit required by the act had been duly made and filed, and while the proceedings remained unreversed, was protected thereby; and that the authority of the commissioners of the town to issue the bonds could not be impeached by showing that such consent had not, in fact, been signed by the requisite number of tax-payers. (BOCKES, J., dissenting.)

APPEAL from a judgment in favor of the defendant, entered upon the report of a referee.

The action was brought to recover the amount due upon certain coupons attached to bonds alleged to have been issued by the defendant to aid in the construction of the New York & Oswego Midland Railroad. The bonds were claimed to have been issued under chapter 398 of 1866, chapter 695 of 1866, chapter 917 of 1867, chapter 61 of 1868, chapter 84 of 1869, and chapter 794 of 1870.

The defense was that the consent of the tax-payers to the issue of the bonds required by the act had not been obtained, and the referee upon the trial found this to be the fact.

*H. & W. J. Welsh,* for the appellant. The consents in writing, filed and recorded, have been made by the statute, the record evidence upon which the officers were authorized to act, and cannot be impeached by parol evidence in a collateral proceeding. (*Pierce* v. *Wright,* 45 How. Pr., 6; *People* v. *Zest,* 23 N. Y., 140.) The defendant is concluded by the affidavit of the assessors and cannot in this action question the sufficiency of the consents to bond. (*Bank of Rome* v. *Village of Rome,* 19 N. Y., 24; *Coms. Knox Co.* v. *Aspinwall,* 21 How. U. S., 546; *Shell* v. *Telfore,* 4 N. Y. Leg. Obs., 307; *Commissioners of Douglas Co.* v. *Bolles,* 4 Otto, 109; *Pierce* v. *Wright,* 45 How. Pr., 7; *People* v. *Mitchell,* 35 N. Y., 552.)

*W. & J. B. Gleason,* for the respondent. All the world are bound to know that towns of the State of New York have, at common law, no power to bond for railroads, and that no such power can exist unless it has been expressly conferred by statute. (See *Town of South Ottawa* v. *Perkins,* 4 Otto, 260, and also 258; *Wiesmer* v. *Village of Douglas,* 64 N. Y., 92; 13 Wall., 304; 23 N. Y.,

440, 459; 3 Wall., 327; *People* v. *Mitchell*, 35 N. Y., 551.) Where there is a total want of authority to issue bonds, there can be no *bonâ fide* holding of them. (*Township of Oakland* v. *Skinner*, 4 Otto, 255; *Town of South Ottawa* v. *Perkins*, Id., 258, 260; *Wiesmer* v. *Village of Douglas*, 64 N. Y., 92; 23 Id., 439, and 24 Id., 114; 33 Id., 224; 62 Id., 465; 75 Id., 397). The affidavit of the assessors in nowise estopped the town from showing that the requisite consents were not given by a majority of the tax-payers, nor for a major part of the property on the roll. The question is no longer a debatable one in this State. (*People* ex rel. *Town of Springport* v. *Teutonia Savings Bank*, 25 N. Y., 397; *Canada R. R. Co.* v. *Hutton*, 18 Hun, 116–124; and *Same* v. *Barrett*, Id., 206; *People* v. *Mead*, 36 N. Y., 229; 55 Id., 180; 10 Id., 334; *Starin* v. *Town of Genoa*, 23 Id., 440, 451, 452; *Town of Wellsboro* v. *N. Y. & C. R. R. Co.*, 76 Id., 182, 185.)

LEARNED, P. J.:

The plaintiff is a *bonâ fide* holder; that is to say he, or the person to whose rights he succeeded, had no actual notice of the alleged defects in the proceedings, and parted with value for the coupons.

The remark, in *Township of East Oakland* v. *Skinner* (94 U. S., 255), that, when there is a total want of authority to issue bonds, there can be no such thing as a *bonâ fide* holding, cannot apply to a case like the present. In that case the court held that there was no statute which authorized the corporation, *under any circumstances*, to issue bonds; and the courts say that it was not a case of an informality or irregularity, fraud, or excess of authority. Numerous cases, one of which is that of *Commissioners* v. *Bolles* (94 U. S., 104), and another is that of *County of Cass* v. *Gillett* (100 U. S., 585), show that, where the alleged defect is in the proceedings to authorize the issue of the bonds, there may be a *bonâ fide* holder, whose rights as such will be protected.

It may be admitted that the commissioners, in such cases as the present, are not town officers. (*Horton* v. *Town of Thompson*, 71 N. Y., 513.) Their acts, therefore, are not those of an ordinary agent, acting for his principal. And the familiar rule, that the

statements of an agent are not evidence of his authority against his principal, is not involved in this case.

But the commissioners are by statute authorized to borrow money on the credit of the town, and to execute bonds, which shall be obligatory on the town. It is provided also, that the powers of the commissioners shall only be exercised, on the condition that the written consent of a majority of the tax-payers be obtained, owning more than half of the taxable property, &c. The statute then proceeds to say that " the fact that a majority of the said tax-payers, representing a majority of the taxable property, has been obtained and acknowledged, shall be proved by the affidavit of one of the assessors of the town or city, or by the affidavit of the town or county clerk, and shall be indorsed upon, or annexed to, said written consent." This consent and affidavit are to be filed in the town clerk's office, and a copy in the county clerk's office; and it is made the duty of the assessors and clerk to make such affidavit.

This act of the assessor or county clerk was not ministerial. It required, for its performance, the examination of facts, and it was a decision thereon.

What was the object of the legislature in requiring this affidavit to be made and filed? Plainly, to enable any one who was about to lend money to the town, through these commissioners, to ascertain how the question of fact had been decided by those to whom the decision had been intrusted. To hold that every person who was about to loan money, must ascertain, at his peril, whether or not a sufficient number of consents had been signed; whether the signatures represented a majority of the taxable property; whether every signature was genuine, and the like, would prevent the object of the act, viz., the borrowing of money on negotiable instruments. The only plain and honest meaning of the act is that the lender might trust to the affidavit of the assessor, or clerk, as a decision, conclusive upon the point submitted to them; at least, until reversed in a direct proceeding for that purpose.

The affidavit of the assessor or clerk in such a case, may be compared to the certificate of the election of municipal officers, made by the proper canvassing board. It stands as the evidence of au-

thority, until reversed in some direct proceeding for the purpose; and the acts of the officer are valid, even though it may be that there was error in the canvass. So in the present case, the canvass of the assessor or clerk, unreversed, is the evidence of authority to the commissioners; who are officers and not mere agents of the town. (*Horton* v. *Town of Thompson*, *ut supra*.)

If not, and if the question might be reviewed in an action on the bonds, and might be then submitted to the varying verdicts of juries, or to other tribunals, then the statute would be a fraud and a trap.

This is the doctrine of the Supreme Court of the United States. It was asserted in the case of *Town of Coloma* v. *Eaves* (92 U. S., 484), a case where the supervisor and the town clerk, being the officers who were to execute the bonds, had recited in the bonds the fact of the vote of the electors. As the statute did not expressly provide what officers were to decide upon the vote, the court held that it was to be gathered from the statute that these officers, who were to issue the bonds, were to ascertain whether a majority voted for the subscription. Therefore, the court held that the recital of the fact in the bond was a decision by them and was conclusive. The doctrine is re-affirmed in the strongest language in *Commissioners* v. *Bolles* (94 U. S., 104).

Now, it is true that, in those cases, there was a recital in the bonds that there had been a vote of a majority of the electors. But the decisions are not based on the fact that such recital is contained in the bond. The decisions are on the ground that the statute did not provide *expressly* for any officer to ascertain the vote; that therefore it might be gathered from the statute that the very officers who were to issue the bonds were those who were to pass upon the vote; and that their recital in the bond was a decision upon the fact that a majority had voted for the issue. The principle was established in those cases, that some officer must decide the question; and that his decision was not afterwards to be questioned. If no officer was expressly named, then it might be gathered from the statute that the officers who were to sign the bonds were also to make the decision on the vote. Whether such decision

was to be expressed by a recital in the bonds, or otherwise, was not made a material circumstance in those decisions.

So, once more, in the case of *Block* v. *Commissioners* (99 U. S., 686), there were no recitals in the bond of an affirmative vote. And the court say, "It may be conceded he (the holder) was bound to inquire whether a majority vote had been returned for the issue of the bonds. But where was he to inquire? Plainly, only of the board, whose province it was to ascertain and declare the result of the election." . . . "He was not bound to canvass the vote for himself, or to revise and correct a mistaken canvass." . . . "And if, relying upon the canvass of the board and the declared result, he accepted the obligations of the county, it would be a strange doctrine were we to hold that *a second canvass, made many years after*, could reverse the first, and annul rights that had been acquired under it. *There is no such law.*"

If there is, there ought not to be. Every one sees now that this "bonding" legislation was unwise and impolitic. Perhaps it is to be regretted that courts, in the outset, did not hold all of it to be unconstitutional, as they held some to be. (*Weismer* v. *Village of Douglass*, 64 N. Y., 102.) But it is too late to question the validity of such statutes. The obligations incurred should be honestly met. And where the officers, to whom the statute intrusted the duty of examining and of passing on the question as to the number and extent of the consents, have performed that duty, their action should be conclusive, unless the statute expressly forbids. In the case of *Town of Springport* v. *Teutonia Savings Bank* (75 N. Y., 397) the decision is placed on the fact that the affidavit was declared to be "*presumptive*" evidence. This was held to show that it was not to be conclusive. In that case, also, the further fact appeared that the proceedings for the bonding of the town had been directly reviewed, under a writ of certiorari, and had been reversed. That has not been done in this case; and the proceedings to bond the town remain in full force.

And, furthermore, in the present case, the statute says that the fact, &c., *shall be proved* by the affidavit; not that the affidavit shall be presumptive evidence; but that the *fact* shall be

thereby *proved*. When a fact is proved, much more is meant than that there is presumptive evidence thereof.

If there had been no such provision in the statute, one who was about to lend money to the town, through the commissioner, might well have inquired how he could be certain that the majority of tax-payers had consented. And, even if he should examine for himself (had this been possible), and should become satisfied that a majority had consented, he might fear that, when the bonding of towns should become unpopular, a jury might come to a different conclusion. Therefore, to enable the town to borrow, and to protect the lender, the legislature authorized him to ascertain from the town clerk's office, or the county clerk's office, whether or not the fact that a majority had been obtained had been *proved*. To that proof he was justified in trusting. To permit the fact thus proved to be now re-examined by another tribunal, as against a *bonâ fide* holder, would be a great injustice.

The defendants have had the money from the plaintiff, or his assignor. If any fraud was practiced, or any duty neglected, the fraud or the neglect was on the part of the defendant's officers; the assessor or clerk. With the decision expressed in the assessors' affidavit, the defendant rested satisfied, until the time for repayment came. And now the defendant should not be allowed to dispute it as against the plaintiff.

The judgment should be reversed, reference discharged, and new trial granted, costs to abide event.

Bookes, J., dissented.

Present—Learned, P. J., Bookes and Martin, JJ.

Judgment reversed, new trial granted, costs to abide event, and reference discharged.