TRUMAN v. INHABITANTS OF TOWN OF HARMONY.

(District Court, D. Maine.  May 29, 1913.)

No. 686.

1. MUNICIPAL CORPORATIONS (§ 943*) — RAILROAD AID BONDS — ISSUANCE — STATUTORY PROVISIONS—COMPLIANCE—RECITAL.

On June 20, 1895, a town meeting voted to issue bonds to the amount of $8,500, and to subscribe for stock in a projected railroad, provided that the railroad company guaranteed that the balance of the money over the subscription necessary for the completion of the road to the town should be subscribed and furnished, and the road equipped and operated, within a year from the date of the meeting. On May 11, 1896, another meeting was held; but the vote at that meeting did not receive the necessary majority, and on June 13th a third meeting was convened, at which it was voted to ratify all acts done at the previous meetings, and to authorize the town to subscribe for stock to the amount of $8,500 in the railroad company, provided that a sufficient guaranty should be given that the railroad should be completed and operated to the town within six months. The bonds recited that they were issued in conformity of the vote passed at the special town meeting held July 13, 1896. *Held*, that since the vote at that meeting was in substantially the same terms as. and ratified, the vote at the former meeting the recital of the bonds referred the purchaser back to that vote as the authority on which the bonds were issued; and hence the fact that the meeting of July 13th was illegal did not invalidate the bonds, since the purchaser was entitled to assume that they had not been issued until the railroad had complied with the guaranty as required by the first vote.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1972–1977; Dec. Dig. § 943.*]

2. TOWNS (§ 52*)—RAILROAD AID BONDS—ISSUANCE.

Where railroad aid bonds were issued by a town in accordance with the authorization voted at two different town meetings, the latter of which was illegal, the vote at that meeting, though conferring no authority to issue the bonds, did not take away the authority already given.

[Ed. Note.—For other cases, see Towns, Cent. Dig. §§ 90–94; Dec. Dig. § 52.*]

3. MUNICIPAL CORPORATIONS (§ 943*)—RAILROAD AID BONDS—RECITALS.

Bonds of a town issued in aid of a railroad, and reciting that they were issued under a vote of the town at a town meeting which was il-

legal, did not estop the holders from showing that the bonds had been otherwise previously authorized at a legal meeting.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1972–1977; Dec. Dig. § 943.*]

4. MUNICIPAL CORPORATIONS (§ 943*)—RAILROAD AID BONDS—BONA FIDE PURCHASER.

In the absence of recitals in bonds issued in aid of a railroad concerning the authority under which they are issued, a bona fide purchaser may assume that they were issued in conformity with the votes of the town, and that the conditions prescribed by the votes and by legislative enactments had been complied with.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1972–1977; Dec. Dig. § 943.*]

5. MUNICIPAL CORPORATIONS (§ 943*)—RAILROAD AID BONDS—VALIDITY—RECITALS.

Where a statute confers on a town, on the performance of certain precedent conditions, authority to execute bonds to aid in the construction of a railroad, and imposes on certain officers the responsibility of issuing the bonds when such conditions have been complied with, recitals by the officers that the bonds had been issued in conformity with the statute imported a full compliance therewith in favor of a bona fide purchaser for value, and precluded inquiry whether such conditions had in fact been performed before the bonds were issued.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1972–1977; Dec. Dig. § 943.*]

6. MUNICIPAL CORPORATIONS (§ 948*)—RAILROAD AID BONDS—EXCHANGE FOR STOCK—DONATION.

Where a town authorized a bond issue in aid of a projected railroad to be exchanged for the railroad company's stock of equal par value, and the bonds after the exchange were sold to a bona fide purchaser for value, the fact that the stock was worthless did not affect the town's liability on the bonds, on the theory that the issuance of the bonds amounted to a donation, which the town had no authority to make.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1982–1990; Dec. Dig. § 948.*]

7. TOWNS (§ 52*)—DEBT LIMIT—DETERMINATION.

Const. Me. Amend. art. 22, provides that no town shall create any liability which, with previous liabilities, shall exceed 5 per cent. of the last regular valuation of the town, provided that the article shall not apply to any fund received in trust by the town, nor to temporary loans to be paid out of money raised by taxation during the year in which they are made. At the time the town issued bonds to the amount of $8,588.85 its valuation was $171,775, its permanent interest-bearing debt was $3,267.78, in addition to which there was outstanding a town note for $1,666.66, payable to the ministerial and school fund, dated March 10, 1854, which represented the proceeds of the sale of land granted to aid the ministry and common schools. The interest on the note had in theory been paid by taxes assessed each year for the purpose, but such interest was not indorsed on the note and had not in fact been paid to the trustees of the fund as a separate corporation, but the assessments had been turned in to the town treasurer and used for the support of the schools of the town, in addition to the regular amount appropriated for that purpose, and applied in the manner provided for the disposition of such funds. *Held*, that such note represented a part of the permanent interest-bearing debt of the town, and was not a fund held in trust; and hence at the time the bonds were issued the town's limit of further in-

debtedness amounted to $3,654.41, and the town was therefore liable on each bond for $3654.41/$8500 of its value.

[Ed. Note.—For other cases, see Towns, Cent. Dig. §§ 90-94; Dec. Dig. § 52.*]

In Equity. Suit by Nathan H. Truman against the Inhabitants of the Town of Harmony. Decree for complainant.

See, also, 198 Fed. 557.

Thaxter & Holt, of Portland, Me., for complainant.

Merrill & Merrill, of Skowhegan, Me., for respondent.

HALE, District Judge. This case now comes before the court for final hearing upon bill, answer, replication, and proofs. The bill prays that a certain portion of an issue of bonds issued by the defendant town may be declared a valid obligation of the town. On August 1, 1896, the town issued bonds to the amount of $8,500, bearing interest at the rate of 4 per cent. per annum. This issue of bonds was to aid in the construction of the Sebasticook & Moosehead Railroad from Hartland to Harmony; in this railroad the town was to take stock in return for the bonds so issued. On June 20, 1895, at a town meeting, the town voted to authorize the selectmen to issue bonds to the amount of $8,500, and to subscribe for stock to that amount in the railroad as soon as organized, provided the railroad could guarantee, to the satisfaction of a committee to be chosen by the town, that the balance of the money over and above $8,500 necessary for the construction and completion of the road to Harmony pledged should be subscribed and furnished, and said road equipped and operated, or, if the railroad did not give this guaranty, the selectmen could issue the bonds and take the stock in the railroad upon completion of the road to Harmony village, if such completion should be within one year from the date of the meeting. On May 11, 1896, another town meeting was held at which it was voted to extend the time to August 20, 1896; but this vote did not receive the necessary two-thirds majority, as required by the statutes of Maine. On June 13, 1896, a third town meeting was held, at which it was voted to ratify all acts and doings of the meeting of June 20, 1895, and of May 11, 1896, and to authorize the town to subscribe for stock to the amount of $8,500 in the Sebasticook & Moosehead Railroad Company, the sum of $8,500 was voted to pay for this stock, and the selectmen were authorized to issue bonds of the town to this amount, at a rate of interest not exceeding 4 per cent., and to deliver the bonds, or the proceeds thereof, as might be deemed expedient, to the railroad, on securing a guaranty from the railroad that it would be completed and operated to Harmony village within six months. At that time a statute of the state of Maine, then in force, provided:

"Whenever a city or town has voted at any legal meeting thereof upon any question of loaning its credit to, or taking stock in, or in any way aiding any person or corporation, said city or town shall not vote again upon the same subject, except at its annual meeting." Revised Statutes of Maine 1883, c. 51, § 138.

The meeting of July 13, 1896, was not an annual meeting. The bonds were, however, issued on August 1, 1896, and were signed by the selectmen and treasurer of the town; they were placed by the selectmen in the hands of the officials of the railroad, were sold by such officials, and came into the hands of one Joseph H. Johnson, who, on November 24, 1896, pledged them with the complainant as security for a loan of $6,800. The loan was not paid by Johnson, who became insolvent, and has remained insolvent ever since. The complainant has been forced to realize on the security, in so far as he is able, to discharge the debt. The first installment of interest on the bonds was not paid when due; and the bonds have ever since remained in default. The issuance of the bonds by the town created a debt which, together with the existing town debt, exceeded the amount which the town could at that time have legally borrowed under the Constitution of Maine. At the time of taking the bonds, the complainant was ignorant of this fact, and supposed them to be valid obligations of the town of Harmony. This bill in equity prays that the court ascertain the portion of these bonds which represent what, on August 1, 1896, the town might have legally borrowed, and that the court decree such portion to be a valid obligation of the town. The complainant offers to surrender for cancellation such portion of the bonds as the court may decree to be invalid.

The defendant filed a demurrer to the bill, which demurrer has been passed upon by this court. By its opinion (198 Fed. 557) the court held that, even though the bonds created a liability exceeding the constitutional debt limit of the town of Harmony, this did not prevent a court in equity from enforcing the liability to the extent the town could legally borrow. The court held further that, although the bonds purported to have been issued in conformity to a vote passed at a town meeting which was not a legal meeting, this would not prevent a recovery, if, in fact, there was authority to issue them under a vote passed at a previous meeting legally held.

No contention is raised by the defendant but that the meeting of June 20, 1895, was a legal meeting; and the complainant at the time he took the bonds was a bona fide holder, ignorant of any defects in the manner of their issue.

[1] The learned counsel for the defendant urges that the burden is on the complainant to show that all the conditions precedent required by the vote of the valid meeting of June 20, 1895, were carried out. The bonds recite that they were issued—

"in conformity of the vote passed at the special town meeting held July 13, 1896, which vote is recorded in the town records of said town of Harmony."

It appears that the meeting of July 13, 1896, was not a legal meeting, but it also appears that the terms of the vote passed at the meeting of June 20, 1895, and the vote of the meeting of July 13, 1896, were substantially the same. The vote at the latter meeting ratified the vote of the former meeting. The recital in the bonds themselves, therefore, refers the purchaser back to the vote of June 20, 1895, as the authority upon which the bonds were issued. The recital in the bonds to which we have referred is very significant to a purchaser, as

indicating that the terms of the vote passed at the legal meeting of June 20, 1895, had been complied with. The second vote provided that:

"Sufficient guaranty should be given that the railroad would be completed and operated to Harmony village within six months."

The first vote provided:

"That a guaranty to the satisfaction of a committee to be chosen by said town that the balance of the money over and above $8,500 necessary for the construction and completion of said road and appurtenances to said Harmony village shall be subscribed and furnished and said road equipped and operated."

[2] We have already seen that the second vote purports to ratify the first. There appears to be no inconsistency between the two provisions relating to the sufficiency of the guaranty. They are substantially the same in effect. By either of the provisions the purchaser of the bonds had the right to assume that the bonds would be issued when a sufficient guaranty was given, which guaranty must be satisfactory to a committee to be chosen by the town, that the railroad would be completed and operated to Harmony village within six months, and that the balance of the money necessary for this completion should be subscribed and furnished as required by the first vote. If the vote passed at the second meeting did not purport to ratify the vote passed at the first, the terms on which the bonds were to be issued as given in the two votes were substantially the same; and a purchaser may be presumed to have known that, if the bonds were issued in conformity to the vote of the second meeting, they were issued in conformity with the vote of the first. A ratification of the vote of the first meeting seems to settle the matter. In connection with the recital in the bonds, it is well urged by the complainant that it is notice to a purchaser that the conditions of the vote passed at the first and legal meeting were complied with. As was said in the hearing on the demurrer, if the meeting of July 13, 1896, had not been held, still the town had ample authority to issue the bonds; if that meeting could give no authority to issue the bonds, it could not take away the authority already given.

[3, 4] We have already held that the recital in the bonds of an invalid statute as authority to issue such bonds does not estop the holders of the bonds from showing that there was, in fact, ample authority to issue them. If there were no recital in the bonds, a bona fide purchaser would have the right to assume that the bonds were issued in conformity with the votes of the town; and that the conditions prescribed by the votes and by the legislative enactments were carried out. The learned counsel for the defendant contends, however, that because there is the recital of the invalid vote of the town, the burden of proof shifts to the complainant, and that he cannot recover without showing affirmatively a compliance with all the conditions precedent required by the valid vote.

It will be remembered that the terms of the invalid vote were not materially different from the terms of the valid one, and that they purport to ratify the vote passed at the legal meeting. Upon an examina-

tion of the law upon the subject, it seems clear that the bona fide purchaser of bonds has the right to assume that the conditions and requirements of the valid, as well as the invalid, act were carried out in the issuance of the bonds, and that such purchaser has done his full duty if he examines the public records, and is not required to inquire further as to the unrecorded acts of a town committee which made no public and recorded report. I think a bona fide purchaser of the bonds had the right to assume that the bonds were issued only after the guaranty as required by the terms of the first vote had been obtained, and that the requirements and conditions of the town votes on the subject were complied with in the issuance of the bonds. The votes themselves, and the proofs in the case, lead to this conclusion. Upon their face the bonds recite a compliance with the provisions of a vote which refers to the vote of June 20, 1895. I think we may fairly say, then, that they substantially recite a compliance with the provisions of the vote of June 20, 1895; for the votes at both meetings were substantially the same, and if the last meeting had never been held there was still authority to issue the bonds under the first vote; and a compliance with its provisions might fairly have been assumed from the fact that the bonds were signed and executed, even though there had been no recital of any authorizing vote.

[5]. Where a statute confers power upon a municipal corporation, upon the performance of certain precedent conditions, to execute bonds in aid of the construction of a railroad, and imposes upon certain officers the responsibility of issuing such bonds when certain conditions have been complied with, recitals by such officers that the bonds have been issued "in conformity with the statute" have been held, in favor of bona fide purchasers for value, to import full compliance with the statute, and to preclude inquiry as to whether the precedent conditions had been performed before the bonds were issued. Evansville v. Dennett, 161 U. S. 434, 440, 443, 16 Sup. Ct. 613, 40 L. Ed. 760; School Dist. v. Stone, 106 U. S. 183, 187, 1 Sup. Ct. 84, 27 L. Ed. 90; Buchanan v. Litchfield, 102 U. S. 278, 26 L. Ed. 138; Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579; Commissioners v. Bolles, 94 U. S. 104, 24 L. Ed. 46; Anderson County Commissioners v. Beal, 113 U. S. 227, 238, 239, 5 Sup. Ct. 433, 28 L. Ed. 966.

[6] It is urged by the learned counsel for the defendant that the railroad company stock which the town of Harmony took in exchange for the bonds proved to be worthless; and hence the money voted by the town was nothing more than a donation, and the case is thus brought within the principle of Hedges v. Dixon County, 150 U. S. 182, 14 Sup. Ct. 71, 37 L. Ed. 1044. When this case was heard upon demurrer, I commented upon the fact that the Dixon County Case arose upon a distinct matter of a donation. Such donation was intended by the town. In the case before me, the town of Harmony did not intend to make any donation to the railroad; and the case is controlled by the intention of the town at the time, and not by the fact that the town's investment proved to be a poor one. The vote at both meetings required that stock in the railroad to an amount equal to the par value of the bonds should be taken. The town was authorized to

proceed in one of two ways—either to sell the bonds for cash and purchase the stock of the railroad, or to turn the bonds over to the railroad in exchange for the stock. It was immaterial to the bona fide holder of the bonds which course the town adopted. The bonds were turned over to the railroad company; the stock was taken. In negotiating its bonds to the railroad and taking stock, the town of Harmony had the use and benefit of the complainant's money. Its use of that money was not a gift to the railroad, nor was it intended as such. It came through the purchase of stock of the railroad by the town. So far as this case is concerned, it is immaterial whether the stock became worthless or not. If the town made a bad investment, it cannot look to an innocent bondholder to make up its loss. Inasmuch as the town did not intend to make a donation, as in the Dixon County Case, this case must be controlled by the cases which were cited on this point when the case was before the court on demurrer. Truman v. Harmony (D. C.) 198 Fed. 557.

[7] The complainant seeks to recover that proportion of the bonds represented by the amount which the town of Harmony could have legally borrowed on August 1, 1896, under the Constitution and laws of the state of Maine. The admitted valuation of the town at that time was $171,777. Under the Constitution of Maine, the town was entitled to borrow 5 per cent. of this valuation, which was $8,588.85. At the time the bonds were issued there was a permanent interest-bearing debt of the town. It is stipulated between the parties that the permanent interest-bearing debt of the town of Harmony on August 1, 1896, was $3,267.78. In addition to this amount there was outstanding on that date a note of the town for the sum of $1,666.66, payable to the order of the trustees of the ministerial and school fund, dated March 10, 1854. This note represented the proceeds procured from the sale of land granted to aid the ministry and common schools. The interest on this note has been in theory paid by taxes assessed each year for that purpose. Such payments of interest have not been indorsed on the note, and are not, in fact, paid to the trustees of the ministerial and school fund as a separate corporation; but such assessments are turned into the town treasury and used for the support of the schools of the town in addition to the regular amount appropriated for that purpose, and are applied in the manner provided by law for the disposition of such funds. There is a question now raised whether the school fund note of $1,666.66 should be counted as a part of the permanent interest-bearing debt of the town. Article 22, amendments of the Constitution of the state of Maine, provides:

"No city or town shall hereafter create any debt or liability, which singly, or in the aggregate with previous debts or liabilities, shall exceed five per centum of the last regular valuation of said city or town: Provided, however, that the adoption of this article shall not be construed as applying to any fund received in trust by said city or town, nor to any loan for the purpose of renewing existing loans or for war, or to temporary loans to be paid out of money raised by taxation, during the year in which they are made."

It is contended by the complainant that the indebtedness represented by the school fund note is a fund held in trust by the town of Harmony, and therefore should not be included as a part of this perma-

nent, interest-bearing debt. The proofs do not, in my opinion, sustain this contention. There is nothing in the case to show but that the note of $1,666.66 is still a valid, existing liability of the town. I think it should be held to be a part of the permanent interest-bearing debt of the town of Harmony. In this view of the case, the note of $1,666.66 should be added to the other permanent interest-bearing debt of the town, namely, $3,267.78, making in all the sum of $4,934.44, and this sum must be held to be the whole of the permanent interest-bearing debt of the town of Harmony on August 1, 1896. The town, then, could legally have borrowed the difference between this amount and 5 per cent. of its valuation, which leaves the sum of $3,654.41. The town actually attempted to borrow $8,500. The complainant, therefore, is entitled to recover on each bond $\frac{3654.41}{8500.00}$ of its value.

A decree for the complainant may be drawn in accordance with this opinion. The case may then be referred to a master. If the parties fail to agree upon a master, the court will appoint such master. The complainant may file draft decree on June 21, 1913. The defendant may file its corrections to such decree on June 28, 1913. The decree may be settled July 8, 1913, at 10 a. m.