## COUNTY OF RAY *v.* VANSYCLE.

Pursuant to a power conferred in the charter of A., a railroad company, a county court of Missouri subscribed, in the year 1860, for stock, and agreed to issue county bonds in payment therefor. Under the authority of an act of the General Assembly of that State, passed in the year 1864, A., by a vote of a majority in interest of its stockholders, said county court voting with said majority, transferred all the assets, rights, and privileges of its charter, and all the work done thereunder, to a company, B. C. was, under the general railroad law, organized as a corporation for constructing a railroad which passed through the county, and an agreement was made, in 1868, between B., C., and the county court, by which the subscription was released; and, in consideration of such release, that court subscribed for the same amount of stock in C., and issued county bonds in payment therefor. The county, by this arrangement, secured, with increased railroad facilities, a road in all material respects the same as that desired and originally contemplated; and it received and still retains the requisite certificates of stock. The county court levied and collected the tax to pay the interest due on the bonds for the years 1869, 1870, 1871, 1872, and 1873; but, in August of the last-mentioned year, directed that the payment of the interest thereunder should be withheld. Suit was brought against the county by a *bona fide* holder of the coupons, who purchased the same for value before their maturity. *Held*, 1. That B. acquired a vested right to demand and receive the bonds of the county, in payment of the original subscription to A.; and that such right was not defeated or impaired by the Constitution of Missouri of 1865. 2. That the agreement made in 1868 is not, as against such holder, subject to the objection that a majority of the qualified voters of the county had not, at a general or special election, expressed their assent to the subscription of stock in C. 3. That the tax-payers are concluded by the act of the county court, and by their own failure to assert, by appropriate proceedings, their legal rights, if any they ever had, to prevent the transfer of the original subscription from one company to the other.

Error to the Circuit Court of the United States for the Western District of Missouri.

This .was an action by Vansycle to recover the amount due on interest coupons attached to bonds which were issued in 1869 in the name of the County of Ray, Missouri, by each of. which it acknowledged itself indebted to the St. Louis and St. Joseph Railroad Company in the sum of $1,000; which it promised to pay to that company or bearer, at the American Exchange National Bank in New York, on the first day of January, 1879, with eight per cent interest, payable annually, upon the presentation and delivery of the coupons.

Each bond contained these recitals: —

" This bond being issued under and pursuant to an order of the county court of Ray County, made under the authority of the Constitution of the State of Missouri and the laws of the General Assembly of the State of Missouri, and authorized by a vote of the people of said county, at a special election held for that purpose.

" In testimony whereof the said county of Ray has executed this bond, by the presiding justice of the county court of said county, under the order of said court, signing his name thereto; and by the clerk of said court, under order thereof, attesting the same, and affixing thereto the seal of said court. This done at the town of Richmond, county of Ray, aforesaid, this second day of ——, 1869.

[L. S.]                              " C. W. Narramore,
                    *" Presiding Justice of the County Court of Ray County, Missouri.*

" Attest:                              Geo. N. McGee,
                    *"Clerk of the County Court of Ray County, Missouri."*

The coupons were in the form following: —

" Richmond, Ray County, Missouri, a.d. 1869.

" The county of Ray acknowledges to owe the sum of eighty dollars, payable to bearer on the first day of January, a.d. 1874, at the American Exchange National Bank in New York, for one year's interest on bond No. ——.

                              " Geo. N. McGee,
                    *"Clerk of County Court of Ray County, Mo."*

Vansycle was a lawful holder for value of the bonds, and received them without actual notice or knowledge of any defects or irregularities in their issue.

The main facts connected with the issue of the bonds cover

a period of more than ten years, commencing with the year 1859.

An act of the General Assembly of the State of Missouri, approved Dec. 5, 1859, and amended Jan. 5, 1860, incorporated the Missouri River Valley Railroad Company, with power to construct a railroad from any point on the North Missouri Railroad in Randolph County, by way of Brunswick, in Chariton County; thence, through Carroll, Ray, Platte, and Clay Counties, to Weston, in Platte County; and authorized the county court of any county in which any part of such railroad might be, to subscribe to the stock of the company, invest its funds in such stock, and raise the funds by tax to be voted by the legal voters of the county, in such manner as the county court might prescribe for the purpose of paying such stock. It declared that the provisions of the general railroad law of Missouri, not inconsistent therewith, should be extended to that company.

The general railroad law of Missouri then in force made it lawful for the county court of any county to subscribe to the capital stock of any railroad company duly organized in Missouri, and, for information, to cause an election to be held to ascertain the sense of the tax-payers of such county as to such subscription, and as to whether the same should be paid by issuing county bonds or by taxation. A county, upon its making such subscription, became, like other subscribers to stock, entitled to the privileges granted, and subject to the liabilities imposed, by that law, or by the charter of the company to which such subscription was made. In order to raise funds to pay the instalments which might be called for from time to time by the board of directors of such company, it was made, the duty of the county court to issue the bonds of the county, or levy a special tax upon all property taxable by law for State and county purposes, &c.

By an act approved March 30, 1860, amendatory to that of Dec. 5, 1859, and for other purposes, the county courts of Ray and other counties specifically named were authorized to issue and deliver the bonds of their respective counties in payment of any subscription to or purchase of the capital stock of the Missouri River Valley Railroad Company which such counties might respectively make; the bonds to be in the sum of not

exceeding $1,000 each bond, having not exceeding ten years to run before maturity, bearing interest at the rate of eight per cent per annum, payable annually at the county seat of the county issuing them, or in the city of St. Louis, as the county court might prefer.

On the 2d of July, 1860, the Ray county court, by an order entered upon its records, directed a vote of the people to be taken on the 13th of August, 1860, on the question whether the county should take $200,000 of stock in the Missouri River Valley Railroad Company, upon the following conditions: That all of said county stock shall be expended on that part of the railroad in that county; that said subscription shall be payable in county bonds, to run ten years, bearing interest, to be paid annually, at the rate of eight per cent; and that no bond shall be issued or delivered to said company until provision shall be made for building the railroad to the eastern boundary of the county.

At an election held, as ordered, one thousand three hundred and thirty-seven votes were cast in favor of the subscription, and six hundred and twenty-three votes against it. The records of the county court state that the vote cast for the subscription was by "a majority of the people and tax-payers of the county of Ray." The court appointed agents to subscribe and vote the stock upon the conditions mentioned in the order. Such subscription was legally made.

An act of the General Assembly, approved Feb. 10, 1864, the provisions of which were accepted by the North Missouri Railroad Company, provided that the Chariton and Randolph Railroad Company and the Missouri River Valley Railroad Company might, by a vote of a majority of their stockholders in interest, transfer and assign to the North Missouri Railroad Company all of their effects, assets, rights, and privileges, under their charters, and all the work that had been done in the construction of their respective roads. The two companies, when the authorized transfer by them made should be accepted by the North Missouri Railroad Company, were to cease to have any corporate existence, and to be styled and known thereafter as the West Branch of the North Missouri Railroad. The act declared that said west branch should commence at the town

of Moberly, in the county of Randolph, on the North Missouri Railroad, and extend west along the route adopted by the Chariton and Randolph Railroad Company, to the city of Brunswick; thence on or near the survey of the Missouri Valley Road to Richmond, in Ray County; and thence, by the most advantageous and practicable route, to some point on the north side of the Missouri River, at or below St. Joseph. The act also provided that all the franchises vested in the Chariton and Randolph Railroad Company and the Missouri Valley Railroad should become, by such transfer and acceptance, fully and completely vested in the North Missouri Railroad Company.

The county court of Ray, at its April term, 1864, appointed agents to vote two thousand shares of stock in the then approaching election for directors of the Missouri River Valley Railroad Company, with instructions also to vote in favor of transferring and assigning to the North Missouri Railroad Company all the effects, assets, rights, and privileges of the Missouri River Valley Railroad Company, and all the work done upon the Missouri River Valley Railroad, as provided in the act of Feb. 10, 1864. The agents thus appointed reported to the court, at its July term, 1864, that in accordance with instructions they had cast the vote of the county. Their report was approved, and ordered to be filed and recorded.

On the 13th of December, 1866, a written agreement was made between the North Missouri Railroad Company and the county court; which provided, among other things, that the company, for the consideration of $150,000 to be paid in the bonds of Ray County, should build, run, and operate its west branch to the city of Richmond, in that county, by a spur of said west branch, and complete the connection within ninety days after the main or straight line of the west branch should be completed to a point opposite Richmond. It is not necessary to set out that agreement. It is sufficient to say that it secured to the county all the railroad facilities which it would have received had the main line of the west branch passed in the immediate vicinity of the city of Richmond; and, in consideration of its consenting to accept the building, operating, and running of said west branch, as thereby provided, and releasing

the North Missouri Railroad from its former obligations, the latter agreed to release the county from the sum of $50,000 of the stock theretofore subscribed for the construction of the said west branch of the North Missouri Railroad. The company agreed to build and construct the spur branch or connection from the main line " to the said city of Richmond aforesaid, so far as the grading is concerned, when said county of Ray issues its bonds for the said sum of $150,000 to said North Missouri Railroad Company, so that it may be ready for the iron by the time the said west branch of said North Missouri reaches a point opposite the said city of Richmond." This agreement was promptly ratified of record, and signed by the justices of said court, with the seal of the county affixed. An order was at the same time made upon the records of the court, directing that bonds of the county amounting to $150,000 be issued " according to the orders of the county court of said county of Ray heretofore made and the stipulations of this contract."

At the same term of the court an agent was appointed to vote the county stock at the next election of directors for the North Missouri Railroad Company.

In January, 1868, the St. Louis and St. Joseph Railroad Company was organized, under the general railroad law of Missouri, for the purpose of constructing and operating a railroad through Ray, Clinton, and Buchanan Counties, from a point on the west branch of the North Missouri Railroad, at Richmond, by the most practicable route, through Plattsburg, to the city of St. Joseph.

On the 15th of April, 1868, the North Missouri Railroad Company authorized its president and executive committee to make such contracts with the St. Louis and St. Joseph Railroad Company, to aid in building the latter road, as might be consistent with the interest of the former company; and also " to release the county of Ray from its subscription of $200,000 to aid in building the west branch of the North Missouri Railroad, upon the condition that this (the North Missouri) company is released from constructing a spur from the west branch to Richmond; and also upon the further condition, that Ray County will subscribe $250,000 stock, and secure the same, to

be paid towards the building of the St. Louis and St. Joseph Railroad."

This proposition was submitted to the county court and rejected. That court, however, on the 19th of May, 1868, entered of record an order from which the following is an extract : " In order that said $200,000 may be applied to the purpose and object of constructing a railroad from the west branch of the North Missouri Railroad, through the city of Richmond, in said county of Ray, to St. Joseph, it is, therefore, ordered by the court that the said sum of $200,000 be, and the same is hereby, transferred to the St. Louis and St. Joseph Railroad Company, to be applied in building, constructing, and operating that portion of the St. Louis and St. Joseph Railroad in Ray County, north of the west branch of said North Missouri Railroad, upon the following express conditions," &c. These conditions provided that the county should be released in writing from its subscription of $200,000 to the North Missouri Railroad Company ; that, upon the filing of such release in the proper office, the presiding justice should subscribe the sum of $200,000 as stock in the St. Louis and St. Joseph Railroad Company ; that bonds for that amount should be issued to the company, $50,000, when the court was satisfied that five miles of the road in Ray County, north of the west branch of the North Missouri Railroad, and beginning at the said branch, was under contract, and for the building of which the bonds and their proceeds were to be applied ; and $50,000 as each additional five miles of the road was graded and ready for the ties, and not then unless the court should be satisfied that all the bonds previously issued had been properly applied.

In accordance with this order, the North Missouri Railroad Company, by its president, executed in June, 1868, and filed for record, its written release to Ray County of the latter's subscription to it of $200,000 ; " the consideration of this release being the entire cancellation of the existing contracts between the county of Ray and the North Missouri Railroad Company, and also the subscription by the county of Ray to the capital stock of the St. Louis and St. Joseph Railroad Company."

No election was held at which the citizens of the county voted in favor of a subscription to the capital stock of the St. Louis and St. Joseph Railroad Company; but, before the court made the order of May 19, 1868, it received the petition of from twelve hundred to fourteen hundred citizens of the county, asking it to transfer its subscription to the St. Louis and St. Joseph Railroad Company.

At the November term, 1868, of the court, an order was made and complied with, directing that $50,000 of the county bonds be issued to the St. Louis and St. Joseph Railroad Company; $50,000 more of them were directed by the court, at its September term, 1869, to be issued; and $50,000 additional, at its November term, 1869. The last $50,000 of the bonds were issued in pursuance of an order entered at its February term, 1870. None of them were delivered until after satisfactory proof had been made of the construction of each five miles of road, as stipulated in the agreement of the parties. The county received and still retains the requisite certificates of stock in payment for which the bonds were issued.

Sect. 14, art. 11, of the Constitution of Missouri ordains that "the General Assembly shall not authorize any county, city, or town to become a stockholder in, or to loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto."

In pursuance of that constitutional provision, the General Assembly, by general statute, declared, that " it shall be lawful for the county court of any county, the city council of any city, or the trustees of any incorporated town, to take stock for such county, city, or town in, or loan the credit thereof to, any railroad company duly organized under this or any other law of the State; provided, that two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent to such subscription."

The court below made a special finding, embracing the facts above set forth, and others stated in the opinion of this court, and rendered judgment in favor of the plaintiff. The county thereupon brought the case here by writ of error.

The case was submitted, on behalf of the plaintiff in error, by *Mr. Francis M. Cockrell*, on the brief of *Mr. William S. Everett*, who contended that

1. The county court had but a specially delegated authority, and could not subscribe for corporate stock, so as to bind the county, except with the assent of two-thirds of the qualified voters thereof, expressed in the mode prescribed. As no election was held or ordered, at which such voters, or any of them, had an opportunity of declaring their assent to the county subscription made in the year 1868, for stock in the St. Louis and St. Joseph Railroad Company, that subscription, and the orders for the issue of bonds in payment of it, were in manifest violation of the Constitution and the statutes of Missouri, the provisions whereof the plaintiff below was bound to take notice.

2. The county, in resisting a recovery upon the coupons, is not estopped from showing that the county court, by reason of the absence of a popular vote, had no jurisdiction in the premises; and that its orders were void, as unauthorized and prohibited acts.

3. The coupons are void in the hands of the plaintiff below, although he had no actual notice of the acts which establish their nullity. The records of the county court, in the matter of the subscription in question, furnish conclusive proof that the condition precedent to the lawful issue of the bonds had not been performed.

*Mr. John B. Henderson*, contra.

MR. JUSTICE HARLAN, after stating the facts, delivered the opinion of the court.

The first inquiry suggested by the facts set forth in the special finding is as to the validity of the agreement of 1868, whereby the county of Ray secured exemption from liability to the North Missouri Railroad Company, on its original subscription of $200,000, and the St. Louis and St. Joseph Railroad Company obtained the bonds of the county for that amount. This question must be determined in the light of all that occurred in connection with the efforts made to secure a railroad through that county.

It appears that, at the election held in the year 1860, more

than two-thirds of the votes cast in the county were in favor of a subscription of $200,000 to the capital stock of the Missouri River Valley Railroad Company, which proposed to construct a railroad through the county. The only condition which the voters imposed was, that the stock subscribed under the authority of that election " should be expended on that part of the railroad in the county of Ray." In obedience to the popular will, the subscription was made in that year. When, however, in 1864, that company transferred all its effects, assets, rights, and privileges to the North Missouri Railroad Company, the latter became entitled to the benefit of that subscription, and, in satisfaction thereof, to the bonds of the county, to the amount of $200,000. Of the validity of that transfer we have no doubt. It was authorized by an act of the General Assembly of Missouri, and made with the sanction of the stockholders of the companies interested, including the county. At the meeting of stockholders called to consider the question of transfer, the county was represented by an agent, designated by the county court, with specific instructions to vote the stock of the county in favor of such transfer. In appointing that agent, with such instructions, the court did not exceed its powers; since, by the terms of the act of Dec. 5, 1859, under the provisions of which the original subscription was made, the court was authorized " to take proper steps to protect the interests " of the county, and also "to appoint an agent to represent the county, to vote for it, and to receive its dividends." It seems, therefore, entirely clear that the North Missouri Railroad Company acquired, prior to the adoption of the State constitution of 1865, a vested right to demand and receive the bonds of the county in payment of its original subscription. This right was not destroyed or impaired by that constitution. It has been decided by the Supreme Court of Missouri, that the section of the constitution of that State relating to municipal subscriptions was " a limitation upon the future power of the legislature, and was not intended to retroact so as to have any controlling application to laws in existence when the constitution was adopted." *State, &c.* v. *Macon County Court,* 41 Mo. 453; *State, &c.* v. *Greene County,* 54 id. 540; *The State, ex rel. &c.* v. *The County Court of Sullivan County,* 51 id. 522; *County of Callaway* v.

*Foster,* 93 U. S. 570.; *County of Scotland* v. *Thomas,* 94 id. 688; *County of Henry* v. *Nicolay,* 95 id. 619.

·But the North Missouri Railroad Company, for some unexplained reason, did not proceed in the construction of the contemplated road. · Counsel do not, however, claim that its delay in that regard worked a forfeiture of its right to the bonds of Ray County, at the time of the organization, in the year 1868, of the St. Louis and St. Joseph Railroad Company. · The latter· had in view the construction of a road from some point on the west branch of the North Missouri Railroad, at Richmond, the. county seat of Ray, to the city of St. Joseph, — in all material respects, the same road for the construction of which the county had previously contracted with the North Missouri Railroad Company.   At this crisis, the latter company, having perhaps a pecuniary interest in establishing a connection between its west branch and the city of St. Joseph, proposed to release the county from its subscription of $200,000, if it would subscribe $250,000 to the capital stock of the St. Louis and St. Joseph Railroad Company.   Declining to assent to that arrangement, the court, on behalf of the county, made a counter-proposition; to wit, that, for the purpose of constructing a railroad from the west branch of the North Missouri Railroad, through Richmond to St. Joseph, it would transfer the $200,000 subscription to the St. Louis and St. Joseph Railroad Company, by making a similar subscription to that company, to be applied in building, constructing, and operating such road, provided the county was released, in writing and of record, from all liability upon its original subscription to the North Missouri Railroad Company.   This proposition was promptly acceded to by both companies.   The required release was executed and put upon record; and the St. Louis and St. Joseph Railroad Company entered upon the construction of, and did construct, the proposed road; receiving the bonds of Ray County in sums of $50,000, as each five miles of road was completed, and faithfully applying the proceeds to that portion of the road which was in that county.

We are now asked to declare that the county is under no legal obligation to pay its bonds, issued and put upon the market under the circumstances we have detailed:

The fundamental proposition underlying the defence is, that, after the adoption of the Constitution of 1865, no subscription of stock could be lawfully made by the county until after an election; and that, no election having been held at which the people voted specifically in favor of a subscription to the stock of the St. Louis and St. Joseph Railroad Company, the action of the court was a nullity, creating no liability whatever upon the bonds issued in pursuance of the agreement of 1868. Whatever weight that proposition might have in some cases, it does not meet the precise issues here presented. It ignores altogether the direct connection which existed between the agreement of 1868 and the action taken by the county and its court prior to the year 1865, whereby the county assumed the obligation to issue its bonds to the amount of $200,000, in discharge of a completed subscription to the stock of a corporation which came into existence and was fully organized before that constitution went into operation, and which could, notwithstanding the adoption of that instrument, compel the county to comply with its contract. It is the case of a transfer of such stock by exchange, in order that the county might obtain the desired road, and be discharged from legal obligations from which it could not justly or rightfully escape. It is not the case of an entirely new subscription, made under the Constitution of 1865, in disregard of its provisions and of the general statutes passed in pursuance thereof. When the arrangement of 1868 was first suggested, the court saw that the desire of its constituents for the construction of a railroad through the county was not likely to be fulfilled through the agency of, or under the contracts previously made with, the North Missouri Railroad Company. Its members became convinced that the only effectual or practicable mode to accomplish that end was to make such an arrangement or combination as that made with the new company. The court was given by the statute, under which the original subscription was made, the power to " take proper steps to protect the interests of the county;" to which end it was authorized to appoint an agent " to represent the county, to vote for it," &c.; and, in exercising this power, it was necessarily invested with very broad discretion. It is not an unreasonable construction of the statute to say that, in determining

what steps were proper for the protection of the interests of the tax-payers, the court had authority to adopt such measures as prudent men managing the affairs of others ought to have adopted. It evidently regarded the arrangement made in 1868 as essential to the protection of the county's interests, so far as they were involved in the subscription of stock previously made, and in the obligations thereby assumed. There is nothing in the record upon which to base any imputation of collusion or bad faith. The action was taken under such circumstances of publicity as to notify the tax-payers generally of all that was doing; and we are not prepared to say that the court had not the power to transfer the subscription from the North Missouri Railroad Company to the St. Louis and St. Joseph Railroad Company, and deliver the county bonds to the latter, upon its agreement to build substantially the same road for the construction of which the original subscription had been made.

But whatever doubt exists upon this point should be resolved in favor of the *bona fide* holders of the bonds. The tax-payers of the county should not, under the peculiar circumstances of this case, be now heard to allege that their agents, invested by statute with the authority and charged with the duty of protecting their interests, had exceeded their powers. The court levied and collected a tax to pay interest due on the bonds delivered to the St. Louis and St. Joseph Railroad Company for the years 1869, 1870, 1871, 1872, and 1873. The coupons were annually paid for the first four years named. It is true that, at a term of the court held in August, 1871, an order was entered of record, stating that the bonds had been issued illegally and were void, and upon that ground the order recited that neither the bonds nor the coupons would be paid by the county. But in March, 1872, that order was rescinded, and the county treasurer directed to proceed with the payment of the interest. It was not until August, 1873, that the court finally determined to repudiate all obligations to pay the bonds; and under its orders the interest collected for 1873 has been retained. It further appears from the special finding that the North Missouri Railroad Company constructed its western branch from Moberly to Kansas City, running through the

county for a distance of between twenty-six and twenty-eight miles; that the St. Louis and St. Joseph Railroad Company constructed its road from opposite Lexington through Richmond, locating a depot in Richmond, and continuing to the northwest boundary of said county, a distance of twenty-eight miles; that said road is completed and operated to the city of St. Joseph, Missouri; that on the first-named road there are four depots located in Ray County, and on the latter five depots; that the money realized from the sale of the bonds issued was expended in the construction of the St. Louis and St. Joseph Railroad, in the county of Ray, and, in consequence of this arrangement, the county secured the construction and operation, within its limits, of about twenty-four miles of railroad more than would have been built under the previous contract or arrangement with the North Missouri Railroad Company.

But this is not all. In payment of the county subscription and bonds, certificates of stock in the St. Louis and St. Joseph Railroad Company were issued to the county, and are still held by it. They have never been tendered for cancellation. When the court declared, in 1873, that the county would pay neither the principal nor the interest due on the bonds, no intimation was given of even its willingness to surrender the certificates.

Upon the clearest principles of justice, the tax-payers of Ray County are concluded by the acts of their official agents, and by their own failure, either intentionally or from neglect, to assert, by appropriate proceedings, their legal right (if any they ever had) to prevent the transfer of their original subscription to the company, which, by the construction of its road, gave them greater railroad facilities, and at no greater cost, than they could have obtained under the contract with the North Missouri Railroad Company.

Although this case has many features peculiar to it, the conclusion we have reached is in harmony with settled principles heretofore announced by this court in numerous cases.

It seems unnecessary to consider other points suggested in argument, as the views here expressed are sufficient to dispose of the case.

*Judgment affirmed.*