CLARK, J., delivers the opinion of the Court.
FURCHES, J., and FAIRCLOTH, C. J., dissent.
The bonds whose validity is impeached by the present action contain no recital of the authority for their issue, but the order of the board of county commissioners upon which the question of their issue was submitted to popular vote in 1875, recites as authority chapter 166, Private Laws 1858-59, to "Amend the charter of the Greenville and French Broad Railroad Company." That act could confer no such authority after the adoption of the Constitution of 1868, which, by section 14, Article II, requires such acts to be passed in the manner therein prescribed. This is held in Comrs. v. Call, at this term, and the reason there given is that the adoption of the new Constitution (487) with the restrictions as to issue of municipal bonds "annulled all special powers remaining unexecuted and not granted in strict conformity with its requirements." This has been repeatedly held by the United States Supreme Court. Norton v. Brownsville, 129 U.S. 479,490; R. R. v. Falconer, 103 U.S. 821; Wadsworth v. Supervisors,102 U.S. 534, 537; Concord v. Savings Bank, 92 U.S. 625.
Such was evidently the legislative view, also, for by chapter 48, acts 1871-72, the General Assembly created a new body politic under the name and style of the "Greenville and French Broad Railroad Company" and gave it all the rights and immunities conferred by the incorporation act of 1854-55, and the amendatory act of 1858-59. Whether this be treated as an entirely new act or as an attempt to revive and renew powers conferred by the prior acts above recited it could grant no valid power to issue these bonds, or order an election upon the subject, because of noncompliance with the requirements of the Constitution, Article II, section 14, in that the bill was not "read three several times in each House of the General Assembly and passed three several readings, which *Page 345 
readings were not on three different days, and agreed to by each House respectively, and the yeas and nays on the second and third reading of the bill were not entered on the Journal." Comrs. v. Call, supra; Charlotte v.Shepard, 122 N.C. 602; Rodman v. Washington, ibid., 39; Comrs. v. Snuggs,121 N.C. 394, and Bank v. Oxford, 119 N.C. 214, and McGuire v.Williams, at this term, in all of which this constitutional provision has been carefully considered.
The defendants further contend that conceding the invalidity of the act of 1858-59 and confirmatory act of 1871-72 as authority to issue the bonds, still the commissioners had authority to order (488) the election by virtue of chapter 171, Laws 1868-69 (which is now The Code, sec. 1996), but the county had theretofore no interest in the railroad and no work was done thereon in this State till after the said election in 1875. The bonds were therefore not authorized because not "necessary to aid in the completion of any railroad." Comrs. v.Snuggs, supra; Comrs. v. Call, supra.
Besides the reasons given in those cases, there is this further consideration, that even if it be conceded that a general act might authorize elections to issue bonds as to all railroads partly completed (in which counties were interested) at the adoption of the Constitution, to aid in their completion, this corporation was never organized till after the charter of reincorporation of 1871, and hence could acquire no rights except those conferred in conformity with the provisions of the Constitution of 1868. Not only must the bonds be authorized by a popular vote (Const., sec. 7, Art. VII), and the authority to hold the election granted by a statute passed in the mode required by Constitution, section 14, Article II, but to exceed double the State tax (which is necessary) the special purpose must be authorized by a special act of General Assembly. Const., sec. 6, Art. V. A general act authorizing any and all counties to issue bonds for railroad purposes would be invalid, especially when (as is the case here) it is necessary to exceed the constitutional limitation to pay interest or principal. Tate v. Comrs., 122 N.C. 812 (at p. 815);Herring v. Dixon, ibid., 420 (at p. 424).
The bonds were issued in 1876-77-78 by virtue of an unauthorized election, and are unconstitutional and void — counties being expressly prohibited from issuing bonds unless authorized in the manner prescribed by the Constitution. Lewis v. Shreveport, 108 U.S. 282
(at p. 286); (489) Ottowa v. Cary, ibid., 110, 123. The payment of interest on the bonds by the county authorities is not an estoppel, nor does it validate them. Such payments were as much without constitutional warrant as the original issue, and one illegal act cannot validate another. Doon v. Cummins, 142 U.S. 366, citing (at p. 376) Marsh *Page 346 v. Fulton, 10 Wall., 676; Loan Asso. v. Topeka, 20 Wall., 655; Daviess v.Dickinson, 117 U.S. 657; Norton v. Shelby, 118 U.S. 425, 451.
There is an act of the Legislature (and only one) that purports to validate these bonds. Private Laws 1876-77, ch. 40. But that can have no effect because it was not passed in the mode required by Constitution, Art. II, sec. 14. Whether if it had been enacted in the constitutional mode it could have supplied the original lack of power to submit the question to popular vote is a question not before us.
The later act of 1893, ch. 172, does not purport to validate these bonds. It simply recites that the bonds had been issued by proper authority (which is a judicial and not a legislative question), and under that erroneous impression, the Legislature proceeded to authorize the issue of new bonds, payable "in gold coin" — which is a deviation from the terms of the original bonds — to be exchanged for the said bonds, or sold and with the proceeds purchase or pay them. The act did not submit the issue of the new bonds to popular vote as was the case in County ofJasper v. Ballou, 103 U.S. 745, but specially provides that the new bonds "shall be regarded and held as a continuation of the bonded indebtedness created as aforesaid," so that if the bonds issued in 1876-77-78 were invalid, the new bonds are equally so. Whether or not (490) a subsequent Legislature can validate bonds issued upon the strength of an election which was held without authority it is very certain they cannot be validated by inference from an act authorizing a sale of new bonds (issued without a popular vote) to take up the first bonds. The validating act must be a directed enactment.
The wisdom of the sovereign people has inserted in the organic law as a protection to taxpayers, the provision to be found in section 14, Article II, and legislation coming within its scope is void unless the constitutional requirement is observed. It is put there for that purpose. Holders of county bonds, who have taken them without ascertaining if there was constitutional authority for their issue, cannot expect the courts to disregard the Constitution to save them from the consequences of their negligence. The judgment below is
Affirmed.