BOARD OF COM'RS OF HENDERSON COUNTY, N. C., v. TRAVELERS'
INS. CO.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1904.)

No. 501.

1. COUNTY REFUNDING BONDS—CONSTITUTIONALITY OF STATUTE—CREATING NEW
INDEBTEDNESS.
Act N. C. Feb. 2, 1893 (Pub. Acts 1893, p. 69, c. 70), authorized Henderson
county to issue bonds to refund a former issue made in 1874 in aid of
a railroad, and provided that such bonds should be deemed a continuation
of the liability created by the former issue, and should not "be taken,
construed, deemed nor held as the creation of a new debt nor liability."
Held that, under the law of the state as determined by its Supreme
Court prior to its passage, such act did not provide for the creation of
an indebtedness, assuming the original bonds to have been valid, and did
not, therefore, come within article 2, § 14, of the state Constitution, re-
quiring bills for acts creating or authorizing a state, county, or municipal
indebtedness to be read three several times in each house on different days,
and the yeas and nays on the second and third readings to be entered on
the journals.

2. COUNTIES—AUTHORITY TO SUBSCRIBE TO RAILROAD STOCK.
The fact that, after the passage of an act authorizing counties through
which a railroad was projected to subscribe to the stock of the company,
such company was consolidated with another, as permitted by the laws
of the state, and the name was changed, did not deprive a county of the
power to thereafter make a valid subscription to the stock of the company
under the new name, nor invalidate bonds issued in payment of such sub-
scription.

3. CONSTITUTIONAL LAW—PROVISIONS OPERATING PROSPECTIVELY ONLY—MAN-
NER OF PASSING STATUTES.
Article 2, § 14, of the Constitution of North Carolina adopted in 1868,
requiring acts creating or authorizing state, county, or municipal debts to
be passed in a specified manner by the Legislature, did not supersede prior
legislation nor affect the validity of acts previously passed, nor did it
render invalid county bonds issued thereafter under authority given by
an act previously passed without such specified formalities.

4. FEDERAL COURTS—FOLLOWING STATE DECISIONS—VESTED CONTRACT RIGHTS.
County bonds, which were authorized and valid when issued under the
law of the state as declared by its Supreme Court in previous decisions,
will not be declared invalid in the hands of bona fide holders by a federal
court because the state court has since reversed its former rulings.

5. MUNICIPAL BONDS—VALIDITY—ESTOPPEL BY RECITALS.
Where there was statutory authority for a county to issue negotiable
bonds, and it has issued such bonds, which have passed into the hands
of bona fide purchasers for value, the county is estopped by recitals there-
in that they were issued in all respects in conformity to the statutes au-
thorizing the same.

6. STATUTES—VALIDITY OF ENACTMENT—RECITALS OF LEGISLATIVE JOURNALS.
Where the recitals in legislative journals relating the passage of a bill
show that such bill was introduced and referred to a committee, and that

¶ 4. State laws as rules of decision in federal courts, see notes to Griffin v.
Overman Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v.
Hite, 29 C. C. A. 553.

¶ 5. Bona fide purchasers of municipal bonds, see note to Pickens Tp. v.
Post, 41 C. C. A. 6.

See Counties, vol. 13, Cent. Dig. § 291; Municipal Corporations, vol. 36, Cent.
Dig. § 1974.

128 F.—52

it subsequently passed its second and third readings by a recorded vote, and the act was ratified by the presiding officers, who certified that it had passed three readings, it sufficiently appears that it had a first reading.

In Error to the Circuit Court of the United States for the Western District of North Carolina, at Charlotte.

H. S. Henderson and O. V. T. Blythe, for plaintiff in error.

Charles Price, Victor S. Bryant, and J. Crawford Biggs (William Bro Smith and R. B. Boone, on the briefs), for defendant in error.

Before SIMONTON, Circuit Judge, and MORRIS and McDOWELL, District Judges.

SIMONTON, Circuit Judge. This case comes up on writ of error to the Circuit Court of the United States for the Western District of North Carolina. The cause below was heard by the court without the aid of a jury. Judgment was entered for the plaintiff below. The defendant sued out the writ of error, and the cause comes before this court on the errors assigned.

The pleadings are voluminous, and their substance will appear in this opinion. The Travelers' Insurance Company, a corporation of the state of Connecticut, brought this action against the board of county commissioners of Henderson county, N. C., as the owner and holder of coupons of the value of $5,580, cut from the bonds of the denomination of $1,000, issued by the defendant, 62 of which were held by plaintiff. These 62 bonds were part of an issue of 97 bonds of said defendant on or about 1st July, 1895. In each of the bonds, and as part thereof, is the following recital:

"This bond is one of a series of ninety-seven bonds of like date, tenor, amount and effect as this, numbered consecutively from 1 to 97, both inclusive, said bonds being issued pursuant to, and in accordance with, the power and authority given to the Board of Commissioners of Henderson County by an act of the General Assembly of the State of North Carolina, entitled 'An act to authorize the Commissioners of Henderson County to issue bonds,' ratified the 2nd day of February, 1893, and in accordance with the provisions of an act, amendatory thereof, ratified March 13th, 1895. It is hereby certified that no provision of the Constitution or of the laws of North Carolina is in any wise violated by the issue of said bonds, and it is further certified and declared that all acts, requirements and conditions precedent or otherwise to the issue of said bonds have been duly and fully complied with; that the said bonds are in all respects legal, and that the public faith and credit of the said county of Henderson is hereby pledged for the payment and redemption of the same, and all interest coupons thereon as the same respectively fall due."

The coupons on said bonds had been duly paid semiannually from January 1, 1896, to January 1, 1901. Thereafter payment was refused. Plaintiff avers that it is the bona fide purchaser for value before maturity, in open market, of these bonds. The defendant filed its answer, denying the validity of these bonds, averring that they were unlawfully issued. On this question the case turns.

The issue of 97 bonds, of 62 of which plaintiff below is the holder, was made under the authority of an act of the Legislature of North Carolina, ratified February 2, 1893 (Pub. Acts 1893, p. 69, c. 70), entitled "An act to authorize the commissioners of Henderson county to

issue bonds." This act recites that the county of Henderson, by order of her board of commissioners, had entered, in pursuance of law, in the year 1874, an ordinance authorizing an election, by votes of the county, on the question of issuing bonds in aid of the Greenville & French Broad Railroad Company, afterwards called the Spartanburg & Asheville Railroad; that the election was held, and subscription authorized and bonds issued in aid of said railroad to the sum of $100,-000, interest at the rate of 7 per cent., payable semiannually, the bonds to mature on 1st July, 1895; and that it was desired to fund said bonds in accordance with law. The act then goes on and authorizes the issue of bonds for that purpose, not exceeding $100,000, payable in 30 years, interest not exceeding 7 per cent. per annum. The second section (page 70) is as follows:

"That the bonds in this act provided for, being intended to be deemed and held a continuation of the liability of Henderson county, created by the provisions of the law, order and election above recited, which authorized the issue of the bonds in aid of the aforesaid railroad, the same shall not be taken, construed, deemed nor held as the creation of a new debt nor liability, but as a continuation of the said debt now existing."

The fifth section (page 70) authorizes the levy of a tax to pay the interest as it accrues.

It is contended that the bonds issued under this act were invalid, because it was not passed in compliance with section 14, art. 2, of the Constitution of North Carolina, which is in these words:

"No law shall be passed to raise money on the credit of the state or to pledge the faith of the state directly or indirectly for the payment of any debt or to impose any tax upon the people of the state, or to allow counties, cities or towns to do so, unless the bill for the purpose shall have been read three several times in each house of the General Assembly and passed three several readings, which readings shall be on three different days and agreed to by each house respectively and unless the yeas and nays on the second and third reading of the bill shall have been entered on the journal."

This act of February 2, 1893, was not passed in this way. Does this make the bond issue of 1895 invalid? We must keep in mind that "the rights of the holders of county bonds are determined in the federal courts by the law of the state as it was declared by the state court to be at the time the bonds were made and put on the market." Wilkes Co. v. Coler, 180 U. S. 506, 21 Sup. Ct. 458, 45 L. Ed. 642. These were bonds to refund a debt. An issue of bonds to refund a debt is not the creation of a new debt. It is simply a change of form, renewing and extending a debt already existing. City of Pierre v. Dunscomb, 106 Fed. 617, 45 C. C. A. 499; Rollins & Long v. County Commissioners, 49 U. S. App. 411, 80 Fed. 692, 26 C. C. A. 91; Hughes Co. v. Livingston, 104 Fed. 306, 43 C. C. A. 553. This doctrine has been recognized by the courts in North Carolina. In Blanton v. Commissioners of McDowell Co., 101 N. C. 532, 8 S. E. 162, Smith, C. J., for the court, says:

"It is perfectly manifest that in the issue of the new bonds in the place of those that had matured, it was not intended to surrender any security which the creditor had for the debt by a novation of the one for the other, but to maintain the indebtedness as essentially one and the same in the different forms assumed. * * * The mere renewed recognition of a subsisting lia-

bility in the issue of a new bond, declared in the very act which authorizes the issue 'to be a continuation of the liability' resting upon the county, cannot, upon any sound reasoning, be deemed the creation of a new debt in the sense of its falling under the restrictions applicable to new contracts of indebtedness, with the deprivation of the pre-existent means of enforcing performance by the levy of the necessary taxes."

This case concerned bonds issued to refund other bonds issued in aid of the Western North Carolina Railroad. So, also, in Broadfoot v. Fayetteville, 128 N. C. 529, 39 S. E. 20, it was held that funding bonds created no new indebtedness or liability when the rate of interest was not increased. And in Smathers v. County Commissioners of Madison County, 125 N. C. 487, 34 S. E. 554, it was held that bonds could be issued to fund necessary expenses of the county, and that they did not come within the provisions of section 14, art. 2, of the Constitution. If, therefore, the original issue of bonds, for the funding of which the act in question provided, was valid, then this act cannot be said to have been passed in violation of this section 14, art. 2, of the Constitution.

Were the bonds originally issued a valid debt on Henderson county? On February 13, 1855 (Priv. Laws 1854–55, p. 269, c. 229), the Legislature of North Carolina passed an act to incorporate the Greenville & French Broad Railroad Company. The first section of the act declared that for the purpose of establishing a communication by railroad from some of the railroads now built or in course of construction in South Carolina along the French Broad valley, across the western part of this state, so as to effect a direct communication between one of said roads in South Carolina and the East Tennessee & Virginia Railroad in East Tennessee, the formation of said company is hereby authorized, which, when formed, shall have corporate existence in each of the states aforesaid, and have all the rights, privileges, and immunities hereafter granted. Then follow 27 other sections, defining and declaring the rights and powers of said company, and a last section, declaring it to be a public act. On February 2, 1857 (Priv. Laws 1856–57, p. 72, c. 77), this act was amended so as to authorize said company to construct the northern portion of said road, extending from Asheville, or some convenient point within two miles thereof, to the state of Tennessee. On February 16, 1859 (Priv. Laws 1858–59, p. 212, c. 166), this act was further amended so as to authorize any of the counties through which said road is intended to pass to subscribe to the capital stock of said company any sum or sums that may be determined on by the court of pleas and quarter sessions of said county, a majority of the justices of the peace of said county being present, and approved by a majority of the lawfully qualified voters of such county, to be ascertained as thereafter provided. Then follow directions how the vote of the people shall be had. The third section authorizes the court, if the majority of the voters of the county approve the subscription, to issue bonds bearing interest not exceeding 7 per cent. per annum, and to levy a tax to meet the interest as it accrues, and to liquidate the principal as it falls due, as they shall judge expedient. No action was taken under this last amendment until 21st July, 1873, when the county commissioners of Henderson county, by

an order reciting that they are acting under this amendment of 1858–59, recommended to the voters of Henderson county that they authorize a subscription to the capital stock of this company, then and thence-forward known as the "Spartanburg & Asheville Railroad Company." The election was held on 7th August, 1873, and the result of the vote was in favor of the subscription. Thereupon the board directed their chairman to make the subscription, and the bonds were issued to the extent of $100,000, bearing interest at 7 per cent. per annum, the bonds being payable 1st July, 1895, and each reciting that it was issued in aid of the Spartanburg & Asheville Railroad Company. It is true that the bonds were to be issued as a subscription to the Greenville & French Broad Railroad Company. This company afterward consolidated with a railroad in South Carolina, and the name of the consolidated company became the Spartanburg & Asheville Railroad Company. The statutes of North Carolina (chapter 138, p. 186, Pub. Laws 1871–72) authorized a consolidation of this character, and, among other things, provided (section 61) that on such consolidation "all stock subscriptions and other things in action belonging to either of said corporations shall be taken and deemed to be transferred to and vested in such new corporation without further act or deed." The consolidation is admitted in the agreed statement of facts in the record. The statute of North Carolina is in accord with the general law. County of Livingston v. The Bank, 128 U. S. 102, 9 Sup. Ct. 18, 32 L. Ed. 359; Scotland County v. Thomas, 94 U. S. 688, 24 L. Ed. 219. The railroad passed through Henderson county. Under a Constitution of the state of North Carolina adopted in 1868, a board of county commissioners was established in each county, which took the place of and succeeded to all the powers and duties of the court of pleas and quarter sessions. Belo v. Commissioners of Forsythe, 76 N. C. 489; Wilkes County v. Coler, 180 U. S. 506, 21 Sup. Ct. 458, 45 L. Ed. 642. At the time of the passage of the amendment of 1858–59 there was no constitutional provision limiting and qualifying the power of the Legislature in the passage of an act like this. Unless the act was repealed or superseded, it remained in full force and effect when in 1873 the election was ordered and in pursuance thereof the bonds were issued. There is no act on the statute book repealing this amendment in terms.

But it is said that this act was repealed by article 2, § 14, of the Constitution of North Carolina adopted in 1868, and set out supra. It will be noticed that the language of this section of the Constitution is in the future. No law "shall" be passed, etc. The courts uniformly refuse to give to statutes a retrospective operation, whereby rights previously vested are injuriously affected, unless compelled to do so by language so clear and positive as to leave no doubt that such was the intention of the Legislature. Chew Heong v. United States, 112 U. S. 536, 5 Sup. Ct. 255, 28 L. Ed. 770; Harvey v. Tyler, 2 Wall. 328, 17 L. Ed. 871. The Supreme Court of the United States has held that a change in a state Constitution, relating to municipal subscriptions, is not retroactive so as to have any controlling application to laws in existence when the Constitution was adopted. It does not destroy a vested right of a corporation to receive bonds of a municipal corporation although they are not issued. Dallas Co. v. Mc-

Kenzie, 110 U. S. 686, 4 Sup. Ct. 184, 28 L. Ed. 285; County of Ray v. Vansycle, 96 U. S. 675, 24 L. Ed. 800; County of Schuyler v. Thomas, 98 U. S. 169, 25 L. Ed. 88. In the County of Scotland v. Thomas, 94 U. S. 688, 24 L. Ed. 219, the court construed a section of the Constitution of Missouri in these words:

"The General Assembly shall not authorize any county, city, or town to become a stockholder in or to loan its credit to any company, association, or corporation, unless," etc.

As to this the court says:

"This provision, it will be observed, is against the Legislature authorizing municipal subscriptions or aid to private corporations. It does not purport to take away any authority already granted. It only limits the power of the Legislature in granting such authority for the time to come."

The Constitution of 1868 (article 4, § 19) declared the laws of North Carolina not repugnant to this Constitution or the Constitution of the United States shall be in force until legally changed, unless inconsistent with the provisions of this Constitution.

There are two cases in the Supreme Court of North Carolina which tend to show that this section 14, art. 2, of the Constitution, was not intended to supersede previous legislation. The convention which adopted the Constitution had, previous to its adoption, passed an ordinance on 9th March, 1868, authorizing a subscription in aid of the Northwestern North Carolina Railroad Company by the county of Forsythe. The election under that ordinance took place 4th April, 1868. The Constitution was ratified April 24, 1868. The subscription pursuant to the election was made in June, 1878. The validity of the subscriptions and of the bonds was tested in Hill v. Commissioners of Forsythe County, 67 N. C. 367, and they were sustained. Thus the Constitution was held not to have superseded the previous legislation. The same point was decided in Belo v. Commissioners of Forsythe County, 76 N. C. 489. These cases were decided in 1872 and 1877, respectively, and were not questioned at the time of the issue of the bonds for which the bonds in this suit were funded.

It is contended, however, that the act of 1858–59 conflicts with the Constitution in that it provides that the stock subscription must be authorized by a majority of the qualified voters, whereas the act required a majority of the votes cast. It is admitted, however, that the original bonds were voted for by a majority of the qualified voters. In Wood v. Oxford, 97 N. C. 228, 2 S. E. 653, Rigsbee v. Town of Durham, 98 N. C. 81, 3 S. E. 749, and Rigsbee v. Durham, 99 N. C. 341, 6 S. E. 64, it is decided that, if the fact appear that the subscription was voted for by a majority of the qualified voters, the defect in the law is cured.

It is also said that the act was repealed by Battle's Revisal. This revisal was approved by Act Feb. 20, 1873. In section 8 of the revisal (page 862, c. 121) it is provided:

"No act of a private or local nature; no act containing a grant of corporate privileges or imposing duties on any particular county inconsistent with the general provisions of law, shall be construed to be repealed by the second section of this chapter."

Again, the repeal is to be of force from and after 1st January, 1874. The election in Henderson county was provided for 21st July, 1873, was held August, 1873, and subscription made November, 1873. So rights had accrued.

It would seem, therefore, that the validity of the original issue of bonds can be sustained under the amendment of 1858–59. In addition to this, the authority to make the subscription to this railroad can be found in section 2, c. 171, p. 417, of the Public Laws of North Carolina, brought forward as section 1997 of the Code of North Carolina 1883, as follows:

"The board of commissioners of any county proposing to take stock in any railroad company shall meet and agree upon the amount to be subscribed, and if a majority of the board shall vote for the proposition, this shall be entered upon the record, which shall show the amount proposed to be subscribed, to what company and whether in bonds, money or other property, and thereupon the board shall order an election to be held on a notice not less than thirty days for the purpose of voting for or against the proposition to subscribe the amount of stock agreed on by the board of county commissioners. And if a majority of the qualified voters of the county shall vote in favor of the proposition, the board of county commissioners, through their chairman, shall have power to subscribe the amount of stock proposed by them and submitted to the people, subject to all the rules, regulations and restrictions of other stockholders in such company. Provided that the counties, in the manner aforesaid, shall subscribe from time to time such amounts either in bonds or money as they may think proper."

The record shows, by extract from the minutes of the county commissioners of Henderson county, that on 21st July, 1873, they unanimously resolved to recommend to the qualified voters of Henderson county the subscription of $100,000, in county bonds and coupons attached, to the capital stock of the Greenville & French Broad Railroad Company, for which an annual tax was to be levied, the bonds to mature at the end of 20 years, and to bear 7 per cent. interest. The board of county commissioners ordered that the question of subscription be submitted to the vote of the people of the county. The election was regularly held, the subscription approved by the people, and the subscription made. The conditions of the subscription were that no bonds be issued until all the stock of the road was subscribed; that the whole subscription be expended for work and labor done in Henderson county, and not elsewhere; that no bonds be issued until the road is let out and in progress of construction in said county; that the road should run through the town of Hendersonville, and a depot be located within the corporate limits; and that the bonds be issued as the exigencies of the case required.

Certain cases decided by the Supreme Court of North Carolina recently have held that neither this act of the Legislature, nor the sections of the Code in which it was incorporated, authorized subscriptions of this character. But the Supreme Court of the United States, and this court in Wilkes County v. Coler, 180 U. S. 531, 21 Sup. Ct. 458, 45 L. Ed. 642, Stanley County v. Coler, 190 U. S. 437, 23 Sup. Ct. 811, 47 L. Ed. 1126, and Commissioners v. Coler, 113 Fed. 705, 51 C. C. A. 379, and Id., 113 Fed. 725, 51 C. C. A. 399, have held that these later decisions do not control the validity of bonds issued

prior to their rendition which were valid under previous decisions of North Carolina of force when they were issued. These recent cases above referred to are Wilkes County v. Call, 123 N. C. 308, 31 S. E. 481; Commissioners v. Payne, 123 N. C. 432, 31 S. E. 711; Commissioners v. Snuggs, 121 N. C. 394, 28 S. E. 539. The reason is obvious. The federal courts sustained the subscriptions made under decisions of the Supreme Court of North Carolina unreversed and in force at their date. It was held that the contracts made under these circumstances could not be invalidated by subsequent decisions. Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359; Folsom· v. Ninety-Six, 159 U. S. 624, 16 Sup. Ct. 174, 40 L. Ed. 278.

We lay no stress upon the case of Henderson County v. Williams, decided very recently in the superior court of Henderson county, N. C., holding these bonds invalid. No bondholder was a party to this suit. It was wholly between county officers, and cannot be treated as res judicata. The same rule applies to the original bonds issued by Henderson county, to refund which the bonds in question in this·case were issued. These original bonds each bear this statement:

"The Commissioners of the County of Henderson regularly represent the body of the county aforesaid, having made a corporate subscription to the capital stock of the Spartanburg & Asheville Railroad Company, which stock, with the dividends accruing thereon, is in the hands of trustees for the holders of said bonds and pledged for the payment of the said bonds and having ascertained the sense of the qualified voters thereof to favor a corporate subscription to the capital stock of the said railroad company by an election duly held for that purpose, having caused these bonds to be issued to meet the installments due upon the county subscription to said company, and the whole is done under the authority conferred and in conformity with the Constitution of the State of North Carolina, and by the authority of the acts of the General Assembly of said State."

These recitals are conclusive, constituting an estoppel in pais upon the county which issued them. Moran v. Miami Co., 2 Black, 722, 17 L. Ed. 342. "Where bonds of a county on their face import a compliance with the law under which they were issued, the purchasers are not bound to look further for evidence of a compliance with the conditions annexed to the grant of power to issue them, and the county is estopped to deny, as against bona fide purchasers, that such conditions have been complied with." Knox County v. Aspinwall, 21 How. 539, 16 L. Ed. 208, followed by a long line of decisions down to Northern Bank of Toledo v. Porter Township, 110 U. S. 608, 4 Sup. Ct. 254, 28 L. Ed. 258. The only duty of a bona fide holder is to see that there is legislative authority to issue the bonds. Douglas County v. Bolles, 94 U. S. 104, 24 L. Ed. 46; Rogers v. Burlington, 3 Wall. 654, 18 L. Ed. 79.

It is objected that the act of the session of 1868–69, ratified April 10, 1869, was not passed in conformity with the Constitution. The parts of the journals of the two houses are in the record. These journals show that on the second and third readings of the bill the ayes and nays were taken and recorded as required by the Constitution. But it is said that the journals do not show that the bill had a first reading. The bill was entitled "A bill to authorize the sev-

eral counties in the state to subscribe to stock in railroad companies."
This is the copy of the House journal:

"Mr. Malone introduced a bill to authorize the several counties in the state
to subscribe to stock in railroad companies, February 17, 1869, referred to
committee on counties and townships."

On February 27, 1869, on motion of Mr. Malone, the rules were
suspended, this bill taken up, and passed its second reading by aye
and nay vote recorded. On March 1, 1869, on motion of Mr. Malone,
the rules were suspended, and this bill taken up and passed its third
and final reading by a recorded aye and nay vote. The Senate Jour-
nal, 4th March, 1869, shows that this bill was received from the
House, read a first time, and referred. It was reported favorably on
6th March, and passed its second reading on 13th March, by a re-
corded aye and nay vote. On 29th March, 1869, it passed its third
reading by a recorded aye and nay vote. No one having even a
slight acquaintance with parliamentary proceedings but knows that,
when a bill is introduced and referred, it must have had at least one
reading. Beside this, this act was duly ratified, and the certificate
of the presiding officers shows that it has had three readings in each
house. The journal shows that it has had a second reading. The
conclusion is inevitable that it must have had a first reading. In
Black v. Commissioners, 129 N. C. 126, 39 S. E. 819, the court says:

"As to the manner of its passage, it appears that the ayes and nays were
duly entered on the journals upon the second and third readings, on two sev-
eral days in each house, as required by Const. art. 2, § 14. The ratification
is conclusive evidence that it was read three several times in each house."
Carr v. Coke, 116 N. C. 223, 22 S. E. 16, 28 L. R. A. 737, 47 Am. St. Rep. 801.

It is gravely contended by the counsel for plaintiff in error that,
when this journal states that the rules were suspended, it is meant
that the rules were suspended which required a full reading of the
bill. There is nothing to sustain this assumption. The journal states
that thereafter the bill received a second reading. The presumption
that bodies like a legislature have followed the law always exists.
The contrary must be proved.

When it is considered that the original bonds were issued in 1875;
that their coupons were regularly paid for 20 years; that the bonds
were called in and funded in the bonds in question in this suit, the
coupons of which were paid regularly until 1st January, 1901; that
the money derived from the sale of the bonds was expended in work
and labor done in Henderson county; that this road was completed
through that county and its county seat, Hendersonville, putting this
remote mountain village and county in touch with the world; and
that this town and county have been enjoying all these advantages
for over 30 years—we can see no merit in the defense. The lan-
guage of Mr. Justice Peckham in Tulare District v. Shepard, 22 Sup.
Ct. 534, 46 L. Ed. 773, is not inappropriate:

"In the case of Douglas County v. Bolles, 94 U. S. 104 [24 L. Ed. 46], this
court said: 'Common honesty demands that a debt thus incurred should be
paid.' That statement has lost no force by the lapse of time, and we think

it applies in its full strength in this case. Unless there is some settled rule of law which prevents recovery in this action, the judgment under review should be affirmed."

The judgment of this court is that the judgment of the Circuit Court be affirmed.