## JOHN U. PERKINS *v.* J. W. SANDERS ET AL.

1. CHANCERY. *Pleading. Allegations of bill.*
A bill in chancery should set out in plain, positive, and perspicuous language the nature of the complainant's case; and a bill which is so vague and uncertain that the court cannot ascertain and decide upon the rights of the complainant, is demurrable.

2. SAME. *Practice. Creditor's bill against stockholders. Parties.*
In a proceeding by a creditor's bill against the stockholders of an incorporated company, the failure to make the company a party defendant, when the bill does not allege that the company has been dissolved or is without assets, is an irregularity.

3. CORPORATION. *Creation by charter. Organization. Powers.*
A charter of incorporation provided that the persons therein named, "and all others who are now, or may hereafter become, associated with them, and their successors and assigns, be, and they are hereby, created a body politic and corporate, under the name and style," etc. This provision was not a proposition to create a corporation upon the performance of precedent conditions, but was the creation of the corporation, requiring the performance of no other act but the acceptance of the charter by the corporators; and if they had applied for the grant of the charter, that was an acceptance in advance; and any action under the charter would be an acceptance thereof. The provision "that the capital stock of the said company shall amount to $60,000, and that it shall be divided into shares of $100 each," did not make the subscription of the $60,000 a condition precedent to the organization of the company by the election of directors, a president, and a secretary, it being expressly provided in the charter that the corporation "might make all by-laws, rules, and regulations for the management of its business, property, and effects, and the transfer of its stock, as to them may seem best." Under these provisions, the president and secretary of such company, elected before the $60,000 were subscribed to the capital stock, could bind the company by a contract made after such subscription, if it was within the powers granted the corporation. *Quære:* Would such contract have been binding, if made before such subscription?

4. SAME. *Charters. Distinction between, as to creation and organization of corporations.*
Under a charter which is a mere proposition for the organization of a corporation, and which requires certain acts to be performed precedent to the existence of the corporation, it cannot come into existence until the conditions have been complied with. But where the charter itself creates a corporation, provided it be accepted by the corporators, the corporation is in existence, for all the purposes of its creation, from the beginning, except so far as there may be restraints placed on it by the charter, either expressly or by plain implication.

5. SAME. *Stockholders liable. Treated as partners. Remedy.*
A charter of incorporation contained the provision, "that, until $30,000 of the

capital stock shall have been paid in, every stockholder of said company shall be held individually liable for the debts of the company." Under this provision, the stockholders are jointly and severally liable, until the payment of the $30,000, for all the debts of the company; and they are to be held as having contracted their obligations as partners, and as liable to be sued directly as other partners, and not as guarantors. But where a creditor for any such debt is himself a stockholder, he cannot sue at law, but must seek his remedy in equity.

6. SAME. *Stockholders sued. Full adjustment. Contribution.*

Where the stockholders of a corporation are individually liable for its debts, and a bill is filed by one creditor, in behalf of all the creditors, against one of the stockholders, the court should ascertain the whole of the indebtedness of the company, and render a decree for the payment of all of it; and it may be collected from the solvent stockholders or stockholder. But in settling the equities between the stockholders, each should be made to contribute in proportion to the amount of his stock; and if the complainant himself be a stockholder, he should be made to contribute his share to his own debt, and to all other debts which may be established.

APPEAL from the Chancery Court of Oktibbeha County. Hon. L. BRAME, Chancellor.

The case is sufficiently stated in the opinion of the court.

*Orr & Sims,* for the appellant.

1. The appellant's remedy is in equity. In the circumstances of this case, the charter makes the stockholders individually and personally liable in their private estates. " Where each of the stockholders is made personally liable in his private estate, the stockholders are subject to the same responsibility as partners, and as if never incorporated." Ang. & Ames on Corp., sects. 611, 619 ; 2 Hill, 269 ; 2 Wend. 327; 14 Wis. 700 ; 17 Mass. 330 ; 2 Denio, 119 ; 18 N. Y. 218 ; 14 Cal. 265 ; 17 Wis. 545 ; 19 Wis. 434.

The appellant (complainant below) is himself a stockholder, and if the stockholders be regarded as partners, one cannot sue the others at law, but must go into chancery for an account between them. 3 Hill, 188 ; 7 Barn. & Cress. 74, 419 ; 2 Har. & G. 295 ; Coll. on Part. 143 ; Story on Part. 319 ; 23 Pick. 112 ; 19 Ga. 325 ; Abb. Dig. Law Corp. 401 ; 1 R. I. 376.

2. The appellant has all the rights of any other creditor of

the corporation. He contracted on the same terms as a stranger, or one not a stockholder. His attitude as a creditor and his attitude as a stockholder are separate and distinct in their bearings, and should not be confused. As a creditor, he has not only the right to make his debt out of the assets of the company, but, there being a default in the payment of the $30,000, "each and every stockholder who may have subscribed stock to said company shall be held individually liable for his debt." Being himself a stockholder, the appellant must bear his share of the burden occasioned by such default, but no more.

3. The bill twice distinctly alleges that $60,000 of the capital stock had been subscribed before the company executed the bond sued on. And if it was necessary for that fact to be alleged, the necessity has been fully met. But we insist that the company was organized the moment the charter was approved. It recognized the persons therein named as associated together. There were no conditions to be complied with before they could become a body corporate. *Talmage Ins. Co.* v. *Sanders*, 43 Ala. 115.

4. The stockholders are estopped to set up as a defence that the company was not properly organized. 19 N. Y. 119, 408; 10 R. I. 112; 57 N. Y. 331; 20 Johns. 669; 19 Johns. 456; Big. on Estop. 549; 2 Otto, 627; Ang. & Ames on Corp., sect. 615.

*Beverly Matthews* and *J. P. Allen*, for the appellees.

1. The bill does not show a subscription of the amount of capital stock required by the act of incorporation, before the company commenced its business. The American rule is, that where the number of shares and amount of the capital stock are fixed by the charter, the whole stock must be subscribed before the corporation can begin business. Such subscription is a condition precedent to entering upon the general business for which the corporation is created. 9 Cush. 192; 16 Ind. 384; 8 Am. Law Rep. 656; 16 Am. Law Rep. 587; 17 Am. Law Rep. 702; 27 Conn. 170; 31 Md. 59; 65 Ill. 309; 4

N. H. 284; 45 N. H. 375; 28 Vt. 401; 39 Me. 571; 40 Me. 172; 41 Me. 512; 6 Pick. 23; 2 Gray, 277; 8 Gray, 596; Green's Brice's Ultra Vires, 105, 106; 4 Paige, 229; 21 Wend. 211; 10 Ind. 47; 51 Miss. 834; 53 Miss. 660. The amendments, as well as the original bill, fail to state the date of the subscription of the $60,000 of the capital stock, or that it was before the commencement of business by the company. That it was before the execution of the bond is immaterial, unless that were the initial point of the business of the company.

2. Every material allegation, and especially such as reach the foundation of the suit, must be stated clearly, certainly, positively, and with precision. Story's Eq. Pl., sects. 255, 256. The allegations must not be contradictory, and the statements must be apparently true; so that if no resistance be offered, a decree *pro confesso* can be taken. The names of all the stockholders, and each one's share of the stock, are matters which should be positively averred.

3. The contract set out in the bill was *ultra vires*. A corporation can make no contract not expressly authorized by its charter, or necessarily incident to the purposes of its creation. 2 Geo. 116; 8 Am. Law Rep. 656; 17 Am. Law Rep. 702; 20 Am. Law Rep. 504. The power to contract cannot be presumed. 2 Geo. 116. It is *ultra vires* a corporation to assume the debt of another, and issue a note therefor. 34 Vt. 144.

4. The bill shows that the appellant was an officer or member of the corporation, and does not show that the delinquency in the payment of the $30,000 was not in part his fault, or that he paid his proportion thereof. Without such allegation, he is not entitled to any relief in equity. 9 Ala. 742.

GEORGE, C. J., delivered the opinion of the court.

The object of this bill is to collect an alleged indebtedness of the Perkinsville Manufacturing Company to the appellant.

There were several demurrers, confessions thereof, and amendments to the bill; and, finally, a demurrer to the bill as amended was sustained, and leave given to the complainant to amend further, which he declined to do. The bill was dismissed, and the complainant appealed.

The bill is liable to the objection of vagueness and uncertainty in some of its most material allegations. It is difficult, if not impossible, to learn from the bill the nature and character of the appellant's debt, even to the extent of being able to decide upon the objections raised by the demurrer, " that the breach of the obligation sued on creates no right in favor of the complainant, and that the agreement on which the obligation is founded is *ultra vires* the corporation."

It is the duty of the complainant to set out his case in plain, positive, and perspicuous language, so that his meaning may not be mistaken. For the failure of the bill in this respect, the demurrer was properly sustained.

The appellant is a stockholder in the Perkinsville Manufacturing Company, and he also claims to be its creditor; and by his bill he seeks to recover from the other stockholders, under a provision of the charter of that company, hereinafter to be set out, the amount of his debt. The bill is filed also in behalf of all the creditors of the company, and is against all the stockholders. The company itself is not made a party, which would have been the regular course in a bill of this character (a creditor's bill), since it is not clear, from the allegations of the bill, that the company is either dissolved or entirely without assets.

The main point raised by the demurrer denied the right of the complainant, upon the ground that he was not a creditor of the company, because he did not show in his bill that the company was sufficiently organized under its charter to make the contract sued on, at the time it was made. This position is founded on the second section of the charter (Sess. Laws 1870, p. 194), which provides " that the capital stock of the said company shall amount to $60,000, and may be increased,

at the option of the stockholders, to $500,000, and that it shall be divided into shares of $100 each."

The obligation sued on is dated in September, 1872, and is signed by the president and secretary of the company. The authority shown for the action of these officers is a resolution and a by-law passed by the stockholders, dated in December, 1871.

The bill alleges that $60,000 of stock was subscribed before the execution of this obligation, but it does not aver that this subscription was made before the date of the resolution and by-law which constitute the authority for making the contract. The chancellor sustained the objection; but in this we are unable to agree with him.

It will here be noticed that this is not a bill by a creditor to collect the unpaid balance of stock due by a stockholder to the the company, as was the case of *Vick* v. *Lane, ante*, p. 681, but a suit to enforce a personal liability of the stockholders for all the debts of the company. So that the only points to be decided are, *first*, whether the obligation which the complainant sued on is a valid debt of the company; and, *second*, whether the circumstances exist which, under the provisions of the charter, make the stockholders liable for the debts of the company. It is, therefore, wholly immaterial whether the stockholders were liable to assessments on their stock, in virtue of the failure of the subscriptions to amount to $60,000, except so far as such failure may, in law, be an obstacle to the due organization of the company, and the creation by it of the debt sought to be enforced.

In charters which are mere propositions for the organization of a corporation, and which require certain acts to be performed precedent to the existence of the corporation, no corporation can exist, and of course no corporate act can be performed, till these conditions have been complied with. In all such cases, where a certain amount is named in the charter as necessary to be subscribed as the capital stock of the company, such subscription is regarded as a condition precedent to the

existence of the corporation, unless otherwise provided in the charter. Persons, therefore, who subscribe for stock under such a charter have a right to assume that they will not be called upon to pay until the amount named in the charter shall be subscribed; and, accordingly, in that class of charters it has been held that subscribers for stock are not liable to assessments on their stock until the full amount of the subscription has been made. But this rule does not apply if there be any thing in the charter which shows a right in the corporation to make the assessments before the full amount of the stock is subscribed, as was decided in *Selma and Marion Railroad Company* v. *Anderson,* 51 Miss. 829.

The charter of this company is not of that character. By the first section of it, it is provided that the twenty-one persons named in it, " and all others who are now, or may hereafter become, associated with them, and their successors and assigns, be, and they are hereby, created a body politic and corporate, under the name and style of the Perkinsville Manufacturing Company," etc. This was no proposition to create a corporation upon the performance of precedent conditions, but it was itself the creation of a corporation, requiring no other act to be performed by the corporators than their acceptance of the charter; and this, even, was unnecessary, if, as it is probable, the corporators had applied for the grant of the charter, and thus accepted it in advance. Action under the charter would be an acceptance of it, and hence there never could be any question as to the existence and due organization of the corporation, when determining upon the validity of a corporate act done within its charter powers; for the performance of the act itself would be an acceptance of the charter.

The distinction between the two classes of charters is thus seen to be, that in the first class the charter is a mere permission on the part of the Legislature for the formation of a corporation, upon the doing of certain acts prescribed in the charter as precedent conditions, and, as a necessary result, no corporate act can be done until these conditions have been

performed, except such as may be expressly permitted by the charter; and as to those acts, it would be considered that the corporation had an existence before its full investiture with its corporate franchises. In the latter class, in which is this company, the corporation is in existence, for all the purposes of its creation, from the beginning, except so far as there may be restraints placed on it by the charter, either expressly or by plain implication.

As the bill alleges that the $60,000 of stock was subscribed before the execution of the obligation sued on, it is unnecessary for us to decide whether the charter so far restricts the power of the corporation to make contracts within the scope and purpose for which the charter was granted, as to prohibit the making of this contract until such subscription is made. But it is insisted that the corporation could not elect a president or board of directors, nor confer the power on them, when elected, to make contracts, until after the subscription of $60,000 of stock should be made; and for this reason it is urged that the obligation sued on, and which was made by the president and secretary on behalf of the company, should be held as made without the proper authority of the corporation.

We do not consider the position a sound one. There is no restriction in the charter upon the exercise by the corporation, from the moment of its creation, of any of its corporate powers, unless it can be implied from the terms of the second section, fixing the amount of the capital stock, as hereinbefore quoted.

It has been seen that the subscription of the prescribed amount of capital stock is not a precedent condition to the organization of the corporation, — that the corporation was created by the very terms of the charter, *eo instanti* with its acceptance by the corporators. The charter does not prescribe how nor when the subscription is to be made, nor the time at which the subscription is to be made payable, nor does it attach any disability to the corporation prior to the subscription. It makes no provision as to how the stock shall be

divided among the corporators named, nor as to the terms
on which new corporators should be admitted. All these
were necessarily left to the discretion of the corporation, and
the power to regulate those matters was also expressly granted
to the corporation as it was created by the charter, by the pro-
vision contained in the first section of that instrument, that the
corporation might " make all by-laws, rules, and regulations
for the management of its business, property, and effects, and
the transfer of its stock, as to them may seem best."

Even if it were conceded that this corporation was within
the rule recognized in *Selma and Marion Railroad Com-
pany* v. *Anderson, supra,* — that no assessments on the
stockholders could be made until the whole amount of the
capital stock was subscribed, unless otherwise provided in the
charter, — it would not follow that, being in full possession
of all its corporate powers, it could not elect a directory,
president, and secretary, and confer on them the authority to
make contracts within the scope of its powers, and that this
authority could not be exercised after the subscription of the
capital stock was fully completed. And this is the case made
by the bill.

We therefore conclude that the obligation sued on was a
valid corporate act, if the agreement upon which it was based
was within the powers granted to the corporation.

The next question is as to the liability of the stockholders.
The sixth section of the charter provides, " that, until
$30,000 of the capital stock shall have been paid in, every
stockholder of said company shall be held individually liable
for the debts of the company."

The bill alleges that $30,000 had not been paid in. The
plain meaning of the provision is, that notwithstanding their
corporate charter, the stockholders, as to the creditors of the
company, are to be considered and treated as individuals and
partners until a fund, deemed by the Legislature sufficient for
the protection of creditors, should be paid into the treasury of
the company.

It is this liability which the bill seeks to enforce. The stockholders are by the sixth section, above quoted, made jointly and severally liable for all the debts of the company. They are liable in the first instance, and not as guarantors of the corporation. Until the payment of the fund required by the charter, they are to be held as contracting all their obligations as partners, and liable directly on them to their creditors ; and they are liable to be sued on these obligations just as other partners are.

When the creditor is a partner, — as in this case, — he cannot sue at law, for he is himself liable to pay the debts of the company ; and if he were to sue, and recover satisfaction from one of the stockholders, this payment would make the paying stockholder a creditor of the company, and he might in turn sue the complainant, and recover back the debt created by such payment. To obviate this, the complainant must come into equity, where there can be a full adjustment and settlement of all the rights of the parties.

It is objected that the obligation of the stockholders is several and limited, and not joint. Our view is that each stockholder, just as a partner in an unincorporated association, is liable for all the debts of the company. But in a bill like this, it being brought in behalf of all the creditors and against all the stockholders, the court should ascertain the whole amount of the indebtedness of the company, and decree that all of it shall be paid, even if it can be collected from only one of the stockholders ; but, in settling the equities between the stockholders, each should be made to contribute in proportion to the amount of his stock. Should any of them prove insolvent, the solvent partners must bear the whole burden, as if they were the sole stockholders. The complainant, being a stockholder, must contribute his share, both to his own debt and to all other debts which may be established.

Because the chancellor was of opinion that the stockholders were not liable unless there had been a subscription of $60,000 before any steps were taken to authorize the creation of

the debt, and the complainant was probably unable to amend in this particular, we shall direct, in approving the chancellor's decree, that it be modified so as to make the dismissal of the bill without prejudice ; but the appellant will pay the costs in this court and in the court below.