GASTONIA COTTON MFG. CO. v. W. L. WELLS CO.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1904.)

No. 469.

1. JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—WANT OF LEGAL INCORPORATION OF PLAINTIFF.

An application for a charter for a corporation was made to the Governor of Mississippi in accordance with the laws of the state, and the proposed charter submitted was approved by him. The state statute provides that "the powers therein specified shall by the approval of the charter be vested in such corporation and it shall go into operation at the time and on the terms and conditions specified." The charter in question provided that the corporation should have power to commence business as soon as $2,000 of its capital stock had been "subscribed and paid for." The three corporators met, and subscribed for that amount of stock, elected themselves directors and officers, and commenced and thereafter carried on business in the corporate name, but neither then nor thereafter was any capital stock paid in, or certificates of stock issued; the business being carried on by the individuals, who drew money out as though it belonged to them individually, without any reference to the corporation, or to the contracts or obligations entered into in its name. *Held*, that the corporation never acquired a legal existence, and could not maintain an action in a federal court against a corporation of another state on the ground that it was a citizen of Mississippi.

2. SAME.

A corporation must have been lawfully created under the laws of a state, to give a federal court jurisdiction of an action brought in its name on the ground of its citizenship in such state; the fact that as to certain persons, and in certain transactions, it may be a corporation de facto, is not sufficient.

In Error to the Circuit Court of the United States for the Western District of North Carolina, at Charlotte.

For opinion below, see 118 Fed. 190.

Charles Price and Armistead Burwell, for plaintiff in error.

Murray F. Smith and Charles W. Tillett, for defendant in error.

Before GOFF and SIMONTON, Circuit Judges, and McDOWELL, District Judge.

SIMONTON, Circuit Judge. This case comes up by writ of error to the Circuit Court of the United States for the Western District of North Carolina. The action was brought in the court below in the name of the W. L. Wells Company against the Gastonia Cotton Manu-

¶ 1. Citizenship of corporations for purpose of federal jurisdiction, see notes to St. Louis, I. M. & S. Ry. Co. v. Newcom, 6 C. C. A. 174; Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

facturing Company on a money demand for $35,967.60. The complaint, in its first paragraph, setting out the jurisdiction of the court, alleges that the plaintiff is a corporation created and duly organized under the laws of the state of Mississippi, and is a citizen and resident of the state of Mississippi, and the defendant is a corporation under the laws of North Carolina. The defendant, in the first paragraph of its answer, admits its own corporate character under the laws of North Carolina, but adds:

"It has no knowledge or information sufficient to found a belief as to the truth of the allegation contained in the first section of the complaint, to wit, that the plaintiff is a corporation organized under the laws of the state of Mississippi, and a citizen and resident of that state, and therefore it denies the said allegation."

This is strictly in accordance with code pleading and practice which prevails in North Carolina. Under this system of pleading, there are two modes of defense to a complaint, demurrer, and answer. So this defense set up here, which ordinarily would be made by plea in abatement, is properly made in the answer. Code Proc. N. C. § 240. So, when the case was heard before the jury, the court below, in formulating the issues, put as the first two these: "(1) Is plaintiff a corporation, as alleged in the complaint? (2) Is plaintiff a citizen of the state of Mississippi?" These issues are practically one and the same. Having formulated the issues, the court directed the jury to find them in the affirmative. The issues presented, as will be seen hereafter, were both issues of law. The jury having found for the plaintiff on all the issues under instructions, a writ of error was allowed, and the case is here on assignments of error. The first five go to the instructions of the court on the first and second issues. The burden of proof on these issues being on the plaintiff below, these facts appeared:

W. L. Wells was dealing in cotton in the state of Mississippi, and conducted a large business—among others, with the defendant below. In 1898 a charter was applied for by him, John T. Wells, and George Butterworth for an incorporation under the name of the W. L. Wells Company. Charters in Mississippi are granted under general laws. An application is made to the Governor for a charter. He refers the proposed charter to the Attorney General, and, upon his certificate that it is not violative of the Constitution and laws of Mississippi, the Governor approves it, and causes the great seal to be affixed to it. In the present case the following form of charter was submitted to the Governor of Mississippi, and by him referred to the Attorney General 26th April, 1898:

"Section 1. Be it known and remembered that W. L. Wells, John T. Wells and George Butterworth, their associates and assigns, are hereby created a body politic and corporate, under the name and style of W. L. Wells Company, and by that name shall have succession for fifty years, shall have power to sue and be sued, contract, and be contracted with, may have a corporate seal, and break and alter the same at pleasure.

"Sec. 2. The capital stock of said corporation shall be fifty thousand dollars, divided into shares of five hundred dollars each, and as soon as ten thousand dollars of said stock is subscribed, and paid for, said corporation shall have power to commence business.

"Sec. 3. Said corporation is formed for the purpose of conducting a general cotton business, and may buy and sell cotton, and may transact a cotton fac-

torage business, may advance money or supplies for the purpose of controlling shipments of cotton, may take and receive mortgages or deeds of trust upon property to secure said advances, and, generally, may have all powers conferred by Chapter 25 of the Annotated Code of 1892, necessary and requisite to carry out the purpose of said corporation.

"Sec. 4. The board of directors of said corporation shall consist of three persons, whose numbers may be increased at any time by a majority vote of the stockholders, and said directors shall have power to elect all necessary officers, and prescribe the duties, salaries and tenure of such officers.

"The foregoing proposed charter of incorporation is respectfully referred to the Honorable Attorney General for his advice as to the constitutionality and legality of the provisions thereof.           A. J. McLaurin, Governor.

"Jackson, Miss., April 26th, 1898.

"The provisions of the foregoing proposed charter of incorporation are not violative of the Constitution or laws of the state.           Wiley N. Nash,
                                                               "Attorney General.

"Jackson, Miss., April —, 1898.

"Executive office [state coat of arms], Jackson, Mississippi.

"The within and foregoing charter of incorporation of the W. L. Wells Company is hereby approved.

"[Great seal of the       In testimony whereof, I have hereunto set my hand
state of Missis-            and caused the Great Seal of the State of Mis-
sippi.]                     sissippi to be affixed this 1st day of June, 1898.
                              "By the Governor:  A. J. McLaurin.

"J. L. Power, Secretary of State.

"Office of Secretary of State, Jackson, Mississippi.

"I, J. L. Power, Secretary of State, do certify that the charter hereto attached, incorporating the W. L. Wells Company, was, pursuant to the provisions of chapter 25 of the Annotated Code, 1892, recorded in the book of Incorporations in this office.

"[Great Seal of       Given under my hand the Great Seal of Mississippi
the State of          hereunto affixed this 1st day of June, 1898.
Mississippi.]                                 "J. L. Power,
                                              "Secretary of State."

The Attorney General gave his certificate in favor of the constitutionality of the proposed charter on the ——— day of April, 1898, and on the 1st day of June, 1898, the Governor caused the great seal of the state to be put to the charter.    The act under which the Governor approved this charter declares:

"The powers therein specified shall by the approval of the charter be vested in such corporation and it shall go into operation at the time and on the terms and conditions specified."

It will be noted that the second section of this charter fixed the terms and mode in which it would get life—could act as a corporation:

"The capital stock of said corporation shall be $50,000, divided into shares of $500, each, and as soon as $10,000 of said stock is subscribed and paid for, said corporation shall have power to do business."

The Governor having sealed the charter, the incorporators met on 18th July, 1898, and read over and adopted it.   Books of subscription were then opened, and W. L. Wells subscribed for ten shares, John T. Wells for five shares, and George Butterworth for five shares.   On the same day and at the same place a stockholders' meeting was held, and W. L. Wells, John T. Wells, and George Butterworth were elected directors.   The meeting thereupon adjourned, and the record does not disclose whether they ever met again or not.   John T. Wells, who was

secretary and treasurer of the company, says that, when the stock was subscribed for, nothing was paid; that he paid for the stock out of the profits of the first year, so did Butterworth, and so did W. L. Wells. Yet he says that these profits were never divided, no dividend was ever declared, no money carried to credit of any stockholder, no stock certificates ever issued. He goes on to say that he never paid any cash into the Wells Company, nor did Butterworth, nor did W. L. Wells, and that there was absolutely no capital to start with; that, notwithstanding, he drew out $10,217.55, and Butterworth took $9,-022.65—both he and Butterworth being men of small means, having no property liable for their debts. It is very clear from this that, having a charter like this, conditioned upon the payment of $10,000 in subscriptions, then these men undertook to exercise powers in the charter without fulfilling or attempting to fulfill the conditions precedent in the charter; that, even when they had made money in the business, they ignored the corporation altogether, and drew the money out of the business as if it belonged to them, and not to the corporation. The charter never went into operation, and the corporation never became a legal entity. More than this, these assumed corporators went on in business, and contracted obligations in the name of the so-called corporation, which did not possess a dollar of property, or have any mode of meeting a debt, thus seeking to cloak their transactions under an assumed corporate name, and avoid in this way all personal responsibility. At the same time, two of them were, in a business sense, irresponsible. It would seem that this transaction was an abuse of, and in fraud of, the law, and that the Wells Company had never, and could not have, any legal existence. When a corporation is formed under an enabling act, all the mandatory provisions of the statute must be complied with. In Beach on Private Corporations, § 12, p. 18, we find:

"There is a broad and obvious distinction between such acts as are declared to be necessary steps in the process of incorporation, and such as are required of the individuals seeking to become incorporated, but which are not made requisite to the assumption of corporate powers. In respect to the former, any material omissions will be fatal to the existence of the corporation, and may be taken advantage of collaterally in any form in which the fact of incorporation can properly be called in question."

The same learned author, at page 27, says:

"It is immaterial that the persons attempting incorporation have acted in good faith, and have actually carried on business under their supposed authority to act as a body corporate."

This seems to be in accordance with the law in Mississippi. In Perkins v. Sanders, 56 Miss. 733, the Supreme Court of that state says:

"In charters, which are mere propositions for the organization of a corporation, and which require certain acts to be performed precedent to the existence of the corporation, no corporation can exist, and, of course, no corporate act can be performed, till these conditions have been complied with. In all such cases, when a certain amount is named in the charter as necessary to be subscribed as the capital stock [in the case at bar it must be subscribed and paid in], such subscription [and, of course, such payment] is regarded as a condition precedent to the existence of the corporation, unless otherwise provided in the charter."

Discussing the broad distinction between a charter which creates a corporation, and invests it at once with corporate powers, and that class of corporations created under general laws requiring an application for a charter, the same court says:

"The distinction between the two classes of charters is thus seen to be that in the first class the charter is a mere provision on the part of the Legislature for the formation of a corporation upon the doing of certain acts prescribed in the charter as precedent conditions, and, as a necessary result, no corporate act can be done until these conditions have been performed, except such as may be expressly permitted by the charter, and as to those acts it would be considered that the corporation had existence before its full investure with its corporate franchise."

It is contended, however, that the plaintiff, if it be not a corporation de jure, is a corporation de facto, and will be so recognized; that, at least, the defendant, having dealt with it as a corporation, is now estopped from denying its existence as a corporation. It must be borne in mind that the question we are now considering is not the relative rights of the plaintiff in error and of the defendant in error. The former may be estopped by its acts. We are dealing with a question of the jurisdiction of this court—a question which the court must always take up, suo motu, if necessary; the question being at the threshold of every case before it. Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173, 32 L. Ed. 543. The presumption is always against the jurisdiction of the Circuit Court, unless the contrary affirmatively appears. Grace v. Am. Cent. Ins. Co., 109 U. S. 278, 3 Sup. Ct. 207, 27 L. Ed. 932. Its jurisdiction does not depend upon the consent of parties actually made, or constructively implied by estoppel. The jurisdiction is statutory, and must follow the statute. When a corporation sues in that court, claiming jurisdiction through diversity of citizenship, it can maintain jurisdiction only by showing that it is the creation of the state of which it claims to be a corporation, and that it is really a corporation. Otherwise it is not a legal entity—a person in the eye of the law. "A corporation cannot, for the purpose of jurisdiction in federal courts, be considered a citizen or a resident of a state in which it has not been incorporated." Southern Pacific Co. v. Denton, 146 U. S. 203, 13 Sup. Ct. 45, 36 L. Ed. 942. When a complainant comes into the Circuit Court of the United States as a complainant, and seeks to sustain the jurisdiction by virtue of its citizenship, it must establish that right in itself, and show the credentials of its birth and existence. The fact that, as to certain persons, and in certain transactions, it may be a corporation de facto, is not enough.

The defendant in error relies with full confidence upon the case of Tulare Irrigation District v. Shepard, 185 U. S. 1, 22 Sup. Ct. 531, 46 L. Ed. 773. That was an action brought in the Circuit Court of the United States for the District of California by plaintiff against the Tulare irrigation district, a public municipal corporation of the state of California. This district had issued coupon bonds for the purposes of their work, had floated them in the market, and plaintiff had become a bona fide purchaser for value. The coupons being matured, payment was refused, and this suit was brought. The defense set up was on certain irregularities in forming the corporation. The act under which the corporation was created required that a petition for the

organization of an irrigation district be presented to the supervisors. of the county, signed by the required number of freeholders. Before the petition was presented, the act required that it be published in some newspaper at least two weeks before its presentation, "together with a notice stating the time of the meeting at which the same will be presented." In that case the petition was properly prepared and signed. The petition, with the signatures, was published in the proper newspaper, together with the notice, but the signatures attached to the petition were not reproduced after the notice. All of the public signatures and notice were published in the same column, and as one entire proceeding, separated from the rest of the contents of the newspaper by a black line across the column above, and another across the column below, this publication. This was charged as a fatal defect, and the bonds were claimed to be invalid. The opinion of the Supreme Court strikes the keynote of the decision in the opening sentences:

"It is agreed in the statement of facts of this case that the moneys received from the sale of the bonds in suit were applied to building and constructing the irrigation works now in use by the defendant corporation. It has, therefore, received full consideration for which the bonds were issued, has built its works with the proceeds, and uses such works for the purposes intended. Notwithstanding these facts, it now refuses to pay the bonds or the interest thereon, and, while acting as a corporation at all times, still sets up that it never was legally organized, and hence had no legal right to issue any bonds."

In the case of Douglas County Commissioners v. Bolles, 94 U. S. 104, 24 L. Ed. 46, the court said:

"'Common honesty demands that a debt thus incurred should be paid.' That sentiment has lost no force by lapse of time, and, we think, applies in its full strength to this case. Unless there be some settled rule of law which prevents a recovery in this action, the judgment under review should be affirmed."

This idea dominated the decision. It is evident from the opinion that the court thought the defendant a corporation de jure. But in the argument, assuming that there were irregularities, the court held that, inasmuch as it attempted to organize under a general law, and it actually used the franchise, and continued to act in every respect as a corporation, it could not deny its corporate existence, so as to defeat its obligations. Indeed, had any other conclusion been reached, a fraud would have been sustained. The distinction between that case and the one at bar is broad and distinct. In the latter case the plaintiff below went into the Circuit Court claiming the jurisdiction because, and only because, it was a corporation resident in a state other than the defendant. It was bound to prove its claim. In doing so, it did not prove a bona fide attempt to fulfill the conditions of its incorporation. On the contrary, there is no evidence whatever of its use of the corporate franchise. It had no certificates of stock, no corporate capital, no declaration of dividends, and, as far as the record discloses, no corporate meeting after the first. Nor, as will be seen hereafter, will the ends of justice be defeated if it be not treated as a corporation. In Baltimore & Potomac R. Co, v. Fifth Baptist Church, 137 U. S. 568, 11 Sup. Ct. 185, 34 L. Ed. 784, the point now under discussion could not arise, as the jurisdiction was not involved. Shapleigh v. San Angelo, 167 U. S. 646, 17 Sup. Ct. 957, 42 L. Ed. 310, simply de-

cides that a state, being creator of a municipal corporation, is the proper party to impeach the validity of its creation, and, if the state acquiesces in the validity of a municipal corporation, the corporate existence thereof cannot be collaterally attacked.

It will be noticed that, in all the cases in which suits by or against de facto corporations were sustained, the ruling is that the corporate existence cannot be collaterally attacked. In the case before us there is no collateral attack. The plaintiff below itself put that question directly in issue.

In our opinion, the plaintiff below (defendant in error here) failed to establish its first allegation, as to its corporate capacity, and the court below erred in instructing the jury to find the issues in this regard in its favor. This conclusion renders unnecessary any discussion of the other assignments of error.

The conclusion reached will not defeat the ends of justice if the claim of the defendant in error be good. It is competent for the persons claiming to be incorporators to carry on the suit in their own names, and, as they have requisite citizenship, the suit can be maintained in the federal court. Jones v. Aspen Hardware Co. (Colo. Sup.) 40 Pac. 457, 29 L. R. A. 143, 52 Am. St. Rep. 220.

It is ordered that the judgment of the Circuit Court be reversed; that this cause be remanded to that court, and, if the plaintiffs below (defendants in error here) be so advised as to continue the suit in that court, that they be allowed to amend their complaint by inserting their individual names as plaintiffs, and that thereupon a new trial be granted; if, however, they decline to do this, that the suit be dismissed without prejudice. Reversed.